# No. 12-41243

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**NCDR, L.L.C.; DENTISTRY OF BROWNSVILLE, P.C., doing
business as Kool Smiles; KS2 TX, P.C.,**
*Plaintiffs-Appellees,*

**v.**

**MAUZÉ & BAGBY, P.L.L.C.; GEORGE WATTS MAUZE, II;
JAMES THOMAS BAGBY, III,**
*Defendants-Appellants.*

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, LAREDO DIVISION,
DISTRICT COURT NO. 5:12-CV-00036

_____

**APPELLANTS' BRIEF**
_____

**Kimberly S. Keller
KELLER STOLARCZYK PLLC
234 W. Bandera Rd., No. 120
Boerne, Texas 78006
Tele: 830.981.5000
Facs: 888.293.8580**

## **CERTIFICATE OF INTERESTED PERSONS**

NCDR, L.L.C., et al.,
                    Plaintiff-Appellees,

v.                                                      No. 12-41243

MAUZÉ & BAGBY, P.L.L.C., et al.,
                    Defendant-Appellants.

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.   *Plaintiff-Appellees*:

     NCDR, L.L.C.

     DENTISTRY OF BROWNSVILLE, P.C. D/B/A KOOL SMILES

     KS2 TX, P.C. D/B/A KOOL SMILES.

2.   *NCDR, L.L.C's parent corporation*

     Kool Smiles Acquisition Corp.

3.   Private equity firm invested in NCDR, L.L.C.

Friedman Fleischer & Low, One Maritime Plaza, 22nd

Floor, San Francisco, California 94111

4.    *Counsel for Plaintiff-Appellees*:

Darren L. McCarty, Sean M. Whyte, Courtney L. Sauer, ALSTON BIRD LLP, 2828 North Harwood Street, Suite 1800, Dallas, Texas 75201

John A. Kazen, KAZEN, MEURER & PÉREZ, L.L.P., 211 Calle Del Norte, Suite 100, Laredo, Texas 78041

5.    *Defendant-Appellants:*

MAUZÉ & BAGBY, P.L.L.C.

GEORGE WATTS MAUZÉ II

JAMES THOMAS BAGBY III

6.    *Counsel for Defendant-Appellants:*

Kimberly S. Keller, KELLER STOLARCZYK PLLC, 234 West Bandera Rd., No. 120, Boerne, Texas 78006

Michael S. Lee, THE LEE FIRM, A PROFESSIONAL CORPORATION, 615 N. Upper Broadway, Suite 708, Corpus Christi, Texas 78401

## STATEMENT REGARDING ORAL ARGUMENT

Appellants request oral argument. This case presents multiple questions of first impression related to Texas's Anti-SLAPP statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011. Appellees are a national chain of dental clinics "specializing in treating children on Medicaid." (R.299). Since 2007, Appellees have been the subject of governmental and media reports regarding allegations of Medicaid fraud and subjecting children dental patients to improper restraints during treatment, over-diagnosis of cavities, and extensive over-treatment.[1] In 2012, Appellants, Texas lawyers, advertised through the television, radio, and internet, posing questions to former patients related to some of the previously reported allegations against Appellees.

Appellees responded by suing Appellants for defamation, business disparagement, and other claims. Appellants filed a motion to dismiss under Texas's Anti-SLAPP statute, which precludes lawsuits filed in retaliation for the exercise of free speech, association, or petition. TEX. CIV. PRAC. & REM. CODE

---

[1](R.294-96, 298-303, 1162, 1164-69, 1175, 1385-87).

ANN. § 27.003. Appellants attached to their Motion over 1,000 pages of evidence showing their speech related to matters of public concern. (R.291-1409).

Because Texas's Anti-SLAPP statute was enacted in June 2011, few courts have interpreted its provisions. Thus, this case presents questions of first impression to this Court regarding the statute's definition of "matter of public concern," as well as its exemption of certain forms of "commercial speech." Appellants contend the important public policies underlying the statute warrant oral argument from this Court.

# **TABLE OF CONTENTS**

*Page*

CERTIFICATE OF INTERESTED PERSONS............................... ii

STATEMENT REGARDING ORAL ARGUMENT ........................ iv

TABLE OF CONTENTS .......................................................... vi

TABLE OF CITATIONS ........................................................... x

STATEMENT OF JURISDICTION ..........................................xvi

STATEMENT OF THE ISSUES.................................................. 1

      ISSUE:     THE DISTRICT COURT ERRED IN FAILING TO
                   DISMISS APPELLEES' STATE COURT CAUSES OF
                   ACTION UNDER TEXAS'S ANTI-SLAPP
                   STATUTE.

STATEMENT OF THE CASE.................................................... 1

STATEMENT OF THE FACTS .................................................. 3

SUMMARY OF THE ARGUMENT ........................................... 18

ARGUMENT ...................................................................... 21

I.     Standard of Review ..................................................... 21

II.    The Texas Consumer Participation Act .......................... 21

     A.     *The Purpose & Express Intent Behind the*
             *TCPA*................................................................. 22

     B.     *TCPA's Burden-Shifting Procedure*........................... 23

III.   The District Court Erroneously Concluded M&B's
       Speech Was Exempted by the TCPA ............................. 24

       A.   *The District Court's Interpretation of Section
            27.010 Is Overbroad and Leads to an
            Unintended Result*.................................................. 26

       B.   *The California Supreme Court, Interpreting a
            Similarly-Worded Exemption, Held the
            Exemption Inapplicable to Attorney
            Advertisements* .................................................... 29

IV.    This Court Should Render Judgment for M&B
       Because Kool Smiles Lawsuit Relates to M&B's
       Right to Free Speech and Petition ................................. 32

       A.   *The Texas Legislature Defined "Free Speech"
            and "Right to Petition" Broadly* ............................. 33

       B.   *Kool Smiles's Lawsuit Is Based on, Relates to,
            or Is in Response to M&B's Right to Free
            Speech* ................................................................ 35

       C.   *Kool Smiles's Lawsuit Is Based on, Relates to,
            or Is in Response to M&B's Right to Petition* ............ 40

       D.   *Other Courts Have Dismissed Dental Clinics'
            SLAPP Lawsuits Under Similar Circumstances* ........ 41

V.     Kool Smiles Failed to Carry Its Burden of Proving
       Every Element of Its Claims by "Clear and Specific
       Evidence" .................................................................... 42

       A.   *This Court Need Not Examine Kool Smiles's
            Evidence Because the Record Proves the
            Absolute Judicial Proceeding Privilege
            Immunized M&B's Statements* ............................... 43

B.    *Kool Smiles Did Not Establish by Clear and Specific Evidence a Prima Facie Case for Each Essential Element of Its Claims* ............................... 46

    1.    The Defamation Claim ................................. 46

        a.    M&B's Speech Is True ............................ 47

        b.    M&B Did Not Make "Statements of Fact" .................................................. 52

        c.    M&B's Speech Was Not "Defamatory" ....................................... 54

            i.    No *Per Se* Slander ......................... 55

            ii.    No *Per Quod* Slander ..................... 56

        d.    No Actual Malice or Negligence .............. 59

            (1)    Kool Smiles Is a Limited Public Figure ................................ 59

            (2)    No Actual Malice/Negligence ......... 62

        e.    Kool Smiles Failed to Present Clear ................................................. 64

    2.    The Business Disparagement Claim .............. 65

    3.    The Tradename/Service Mark Dilution Claim ......................................................... 66

    4.    The Injury to Business Reputation Claim ......................................................... 67

CONCLUSION ................................................... 68

CERTIFICATE OF SERVICE ................................................. 69

CERTIFICATE OF COMPLIANCE .......................................... 70

# TABLE OF CITATIONS

Page

**CASES FROM THE SUPREME COURT OF THE UNITED STATES**

*Bentley v. Bunton,*
    94 S.W.3d 561 (Tex. 2002) ............................................ 53

*Erie R.R. Co. v. Tompkins,*
    304 U.S. 64 (1938) ........................................................ 21

*Forbes Inc. v. Granada Biosciences, Inc.,*
    124 S.W.3d 167 (Tex. 2003) .......................................... 65

*Hurlbut v. Gulf Atl. Life Ins. Co.,*
    749 S.W.2d 762 (Tex. 1987) .......................................... 65

*James v. Brown,*
    637 S.W.2d 914 (Tex. 1982) ..................................... 44,45

*Musser v. Smith Protective Servs., Inc.,*
    723 S.W.2d 653 (Tex. 1987) ..................................... 54,55

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964)................................................. 59,62

*Randall's Food Market, Inc. v. Johnson,*
    891 S.W.2d 640 (Tex. 1995) .......................................... 47

*Reagan v. Guardian Life Ins. Co.,*
    140 Tex. 105, 166 S.W.2d 909 (1942)............................ 44

*Tex. Lottery Comm'n v. F. State Bank of DeQueen,*
    325 S.W.3d 628 (Tex. 2010) .......................................... 27

*Turner v. KTRK Television Inc.,*
    38 S.W.3d 103 (Tex. 2000) ............................................ 55

*WFAA- TV, Inc. v. McLemore,*
    978 S.W.2d 568 (Tex. 1998) ....................... 47,57,60,62,64

**CASES FROM THE CIRCUIT COURTS OF APPEALS**

*Godin v. Schencks,*
    629 F.3d 79 (1st Cir. 2010) ........................................... 24

*Henry v. Lake Charles American Press,*
    566 F.3d 164 (5th Cir. 2009).................................... 21,24

*Trotter v. Jack Anderson Enters., Inc.,*
    818 F.2d 431 (5th Cir. 1987)......................................... 60

*United States ex rel Newsham v. Lockheed Missiles*
*& Space Co.,*
    190 F.3d 963 (9th Cir. 1999).................................... 21,24

*Welborn v. State Farm Mut. Auto. Ins. Co.,*
    480 F.3d 685 (5th Cir. 2007)......................................... 21

**CASES FROM FEDERAL DISTRICT COURT**

*Armington v. Fink,*
    No. 09–6785, 2010 WL 743524 (E.D.La.
    Feb. 24, 2010) ............................................................. 24

*Brown v. Wimberly,*
    No. 11–1169, 2011 WL 5438994 (E.D.La.
    Nov. 9, 2011)............................................................... 24

*Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich,*
    — F.Supp.2d —, 2012 WL 2717075 (E.D. La. 2012)....... 25

*Nike Inc. v. Variety Wholesalers, Inc.,*
    274 F. Supp. 2d 1352 (S.D. Ga. 2003)........................... 66

*Rhodes College, Inc. v. Johnson*,
    No. 3:10-CV-0031-D, 2012 WL 627273 (N.D.
    Tex. Feb. 27, 2012) ...................................................... 46

## CASES FROM TEXAS COURTS

*Arant v. Jaffe*,
    436 S.W.2d 169 (Tex. Civ. App.–Dallas 1968,
    no writ) ................................................................. 55,56

*Avila v. Larrea,*
    _ S.W.3d _, 2012 WL 6633944 (Tex. App. —
    Dallas 2012, no pet.) .................................................. 40

*Bell v. Lee*,
    49 S.W.3d 8 (Tex. App.—San Antonio 2001,
    no pet.) ................................................................. 43,44

*Billington v. Houston Fire & Cas. Ins. Co.*,
    226 S.W.3d 494 (Tex. Civ. App.—Fort Worth
    1950, no writ) ............................................................ 56

*Columbia Valley Reg'l Med. Ctr. v. Bannert*,
    112 S.W.3d 193 (Tex. App.—Corpus Christi
    2003, no pet.) ......................................................... 54,55

*Durckel v. St. Joseph Hosp.*,
    78 S.W.3d 576 (Tex. App. Houston—[14th
    Dist.] 2002, no pet.) ................................................. 53,58

*Houston Belt & Terminal Ry. Co. v. Wherry*,
    548 S.W.2d 743 (Tex. Civ. App.—Houston [1st
    Dist.] 1976, writ ref'd n.r.e.) ......................................... 64

*In re Jennings*,
    203 S.W.3d 32 (Tex. App.—San Antonio 2006,
    no pet.) ...................................................................... 57

*Kelly v. Diocese of Corpus Christi,*
   832 S.W.2d 88 (Tex. App.—Corpus Christi
   1992, writ dism'd w.o.j.)........................................... 57,64

*Montgomery Ward & Co. v. Peaster,*
   178 S.W.2d 302 (Tex. Civ. App.—Eastland 1944,
   no writ) ....................................................................... 54

*Moore v. Waldrop,*
   166 S.W.3d 380 (Tex. App.—Waco 2005, no pet.)...... 56,57

*Overstreet v. Underwood,*
   300 S.W.3d 905 (Tex. App.–Amarillo 2009,
   pet. denied) ............................................................... 55

*Rodriguez v. NBC Bank,*
   5 S.W.3d 756 (Tex. App.—San Antonio 1999,
   no pet.) ....................................................................... 47

*Russell v. Clark,*
   620 S.W.2d 865 (Tex. Civ. App.—Dallas 1981,
   writ ref'd n.r.e.).................................................... 44,45,46

*Simmons v. Ware,*
   920 S.W.2d 438 (Tex. App.–Amarillo 1996, no writ)........ 55

*Swate v. Schiffers,*
   975 S.W.2d 70 (Tex. App.—San Antonio 1998,
   pet. denied) ...................................................... 58,59,61

*Thomas v. Bracey,*
   940 S.W.2d 340 (Tex. App.—San Antonio 1997,
   no writ) ..................................................................... 45

*Vice v. Kasprzak,*
   318 S.W.3d 1 (Tex. App.—Houston [1st Dist.]
   2009, pet. denied)..........................................57,59,62,63

**CASES FROM OTHER STATES**

*Simpson Strong-Tie Co. v. Gore,*
    49 Cal.4th 12, 230 P.3d 1117 (Cal. 2010) ... 18,26,29,30,31

**RULES & STATUTORY AUTHORITY & LEGISLATIVE HISTORY**

TEX. BUS. & COM. CODE. § 16.29 ............................................. 67

TEX. CIV. PRAC. & REM. CODE ANN. § 22.022 ............................ 42

TEX. CIV. PRAC. & REM. CODE ANN. § 22.024 ............................ 43

TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011 ............ *passim*

TEX. CIV. PRAC. & REM. CODE ANN. § 27.001 ...................... *passim*

TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 ...................... *passim*

TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003-.005 ............ *passim*

TEX. CIV. PRAC. & REM. CODE ANN. § 27.005 ...................... *passim*

TEX. CIV. PRAC. & REM. CODE ANN. § 27.006 ...................... *passim*

TEX. CIV. PRAC. & REM. CODE ANN. § 27.008 ...................... *passim*

TEX. CIV. PRAC. & REM. CODE ANN. § 27.010 ...................... *passim*

TEX. CIV. PRAC. & REM. CODE ANN. § 27.011 ...................... *passim*

TEX. CIV. PRAC. & REM. CODE § 73.005 ................................... 47

TEX. GOV'T CODE ANN. § 311.011 ......................................... 27

TEX. OCC. CODE ANN. § 256.001 ............................................. 67

House Comm. on   Judiciary and Civil Jurisprudence,
    Bill   Analysis,   Tex.   HB 2973, 82nd Leg., R.S.
    (2011) ......................................................................... 27

### SECONDARY AUTHORITIES

BLACK'S LAW DICTIONARY 1178 (8th ed. West 2004) .................. 55

Charles   D.   Tobin,   *Help   Restore   Balance   to   Free
    Expression  in  Litigation  with  Anti-SLAPP  Statutes,*
    Communications Lawyer (June 2012)............................ 21

## **STATEMENT OF JURISDICTION**

Jurisdiction of this Court is invoked under the Collateral Order Doctrine. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949); *Davis v. E. Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 925 (5th Cir. 1996). In this case, Appellants filed a motion to dismiss under Texas's Anti-SLAPP[2] statute. TEX. CIV. PRAC. & REM. CODE ANN. § 27.008. The District Court denied the Motion. (R.1575).

Texas's Anti-SLAPP statute provides for an immediate appeal. TEX. CIV. PRAC. & REM. CODE ANN. § 27.008. This Court has held that the denial of a motion to dismiss filed under a state Anti-SLAPP law is immediately appealable. *See Henry v. Lake Charles American Press,* 566 F.3d 164, 181 (5th Cir. 2009) ("[W]e hold that a district court's denial of a motion brought under an Anti-SLAPP statute such as Article 971 is an immediately-appealable collateral order."); *see also Godin v. Schencks,* 629 F.3d 79, 84 (1st Cir. 2010); *Hilton v. Hallmark Cards*, 580 F.3d 874, 880 (9th Cir. 2009).

---

[2]"SLAPP" is an acronym for "Strategic Litigation Against Public Participation." (R.1576).

xvi

Here, this case presents the same issue on appeal as that presented in *Henry, i.e.,* the review of a denial of an Anti-SLAPP motion to dismiss. Accordingly, Appellants contend jurisdiction lies with this Court under the Collateral Order Doctrine.[3]

---

[3]Appellants do not appeal the District Court's ruling on their Motion to Dismiss based on Federal Rules of Civil Procedure 8(a) and 12, (R.197), but rather, reserve the right to appeal that ruling after final disposition of this case. *See Hilton,* 599 at 901-02 (holding that ruling on dismissal motion based on California's Anti-SLAPP statute was immediately appealable, but ruling on dismissal motion based on Federal Rule of Civil Procedure 12 fell outside the Collateral Order Doctrine).

## STATEMENT OF THE ISSUES

**THE DISTRICT COURT ERRED IN FAILING TO DISMISS APPELLEES' STATE COURT CAUSES OF ACTION UNDER TEXAS'S ANTI-SLAPP STATUTE.**

## STATEMENT OF THE CASE

This appeal raises questions of first impression about the scope and breadth of provisions within Texas's Anti-SLAPP statute, the Texas Consumer Participation Act ("TCPA"). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011. Appellants are two Texas lawyers (George Watts Mauzé II; James Thomas Bagby III) and their law firm (Mauzé & Bagby, PLLC) (all hereinafter collectively referred to as "M&B"). (R.1187,1221,1227). M&B represents more than 600 parents on behalf of Texas children who are pursuing legal claims against Appellees for injuries caused by over-diagnosing cavities, misdiagnosing cavities, performing unnecessary and excessive dental services, wrongfully and excessively physically restraining children, and providing dental services falling below the minimum standards of care. (R.258).

Appellees own and operate 130 Medicaid-focused dental clinics across the country, including 38 clinics in Texas. Appellees are NCDR, L.L.C., a limited liability company headquartered in Georgia; Dentistry of Brownsville, P.C. d/b/a Kool Smiles, a professional corporation incorporated in Texas; and KS2 TX, P.C. d/b/a Kool Smiles, a professional corporation incorporated in Texas (hereinafter collectively referred to as "Kool Smiles"). (R.1187).

Kool Smiles sued M&B based on M&B's internet, radio, and television advertisements and statements, which informed the public about the allegations against Kool Smiles, (R.7). Kool Smiles' suit also alleged that M&B accused Kool Smiles of Medicaid fraud.  M&B filed a TCPA Motion to Dismiss. (R.251). The District Court denied M&B's Motion. (R.1575). This appeal followed. (R.1637). The District Court has stayed proceedings during the pendency of this appeal. (Dkt. 42).

## STATEMENT OF THE FACTS

Publication of allegations of Kool Smiles's bilking the Medicaid system and provision of grossly inadequate pediatric dental services has been ongoing since 2007. (R.292, 294, 1162, 1175, 1385-87). In 2012, M&B reiterated some of these allegations to the public through internet, radio, and television advertisements. In retaliation, Kool Smiles filed a 33-page complaint in federal court, alleging defamation, false advertising, injury to business reputation, and other causes of action. (R.7). Although M&B's right to free speech and petition are protected by the TCPA, the District Court erroneously denied M&B's Motion to Dismiss.

### *Medicaid Fraud: A National & Statewide Epidemic*

Over the past two decades, Medicaid spending has grown by 450% and costs American taxpayers $457 billion a year. (R.327, 329). In fact, annual Medicaid spending "now exceeds Wal-Mart's worldwide revenue and annual Medicaid spending is 40-percent larger than Greece's entire economy." (R.343). In 2003, the Government Accountability Office added Medicaid to

its list of high-risk programs. (R.327). In 2010, a federal report by the Medicaid Integrity Program found that "fraud, waste, and abuse represent a persistent, pervasive threat to the integrity of Medicaid." (R.330).

Medicaid provides dental and some orthodontic benefits to qualifying children. (R.340). In 2012, a Report from the Congressional Committee on Oversight and Government Reform concluded Texas presents "numerous examples of egregious fraud and abuse within the Medicaid dental program." (R.341). Texas "has admitted that widespread fraud was occurring and that the organization the state hired to assess prior authorization forms was essentially rubber stamping forms for approval." (R.341). An orthodontist brought in by the Texas Office of the Inspector General for the Department of Health and Human Services to audit authorization forms "found that about 95% of approved authorizations should have been denied." (R.341).

Newspaper, internet, and magazine articles have repeatedly recounted audits and stories about dentists and

dental chains accused of Medicaid fraud. (R.305-24, 345-47, 1402) (reporting a $24 million settlement between the Department of Justice and dental chain, Small Smiles, for submitting false Medicaid claims; reporting a settlement between the South Carolina Department of Health & Human Services and a South Carolina dentist for submitting false Medicaid claims; reporting on The Smile Center, a dental chain alleged to have committed Medicaid fraud based on unnecessary dental treatment of children).

These news reports have also zeroed in on a "popular business model" whereby dental chain allegedly over-diagnose and perform excessive and unnecessary dental treatments on children covered by Medicaid. *Id.;* (R.1384) ("Isaac's case and others like it are under scrutiny by federal lawmakers and state regulators trying to determine whether a popular business model fueled by Wall Street money is soaking up taxpayer funds and having a malign influence on dentistry").

### *Who Is Kool Smiles?*

Kool Smiles is a national chain of dental clinics "specializing in treating children on Medicaid."[4] Kool Smiles was started in 2002 by Dr. Tu Tran and Dr. Thien and now consists of 130 clinics across the country run by NCDR, a limited liability corporation formed in Delaware owned by the San Francisco investment firm, Friedman Fleischer & Lowe. (R.298-300, 1385).

In 2010, 35 Kool Smiles clinics in Texas collected $64,115,547.83 in Medicaid reimbursements. (R.253, 351-1160). Presently, Kool Smiles is the subject of two separate, but parallel, Medicaid fraud investigations by the Texas Attorney General's Office. (R.1231, 1385-87).

### *Governmental Agencies and Insurers Begin Investigating Kool Smiles*

Kool Smiles is headquartered in Georgia. (R.298-300). In March 2007, the Inspector General for the Georgia Department of Community Health ("GDCH") began an audit of Kool Smiles

---

[4](R.299). In its Complaint, Kool Smiles admits that "[p]atients seeking dental care at Kool Smiles are frequently supported by state- or federally-funded programs, such as Medicaid." (R.1189).

to investigate concerns regarding "unusual patterns of patient restraint (such as the use of restraint boards for children), over-utilization of stainless steel crowns in children compared to other dentists and normal averages, and lower use of preventative care (*i.e.*, fewer sealants used to prevent cavities)." (R.295-96, 292). In August 2007, WellCare, who provides managed care services for government-sponsored healthcare programs, removed Kool Smiles from the network and began reviewing allegations of over-utilization of services and "unusual patterns of patient restraint."[5]

WellCare's investigation uncovered "some startling facts," including that Kool Smiles performs 17% more procedures per patient than other dentists. (R.294). The investigation also revealed that a child treated by Kool Smiles is:

- Five times more likely to receive crowns

- Four times more likely to receive five or more crowns

---

[5](R.294). WellCare's Chief Operating Officer made a public statement that: "It is a shame that Kool Smiles has been unnecessarily scaring our members about their access to dental care. . . In the face of their well-orchestrated campaign of scare tactics, we could no longer sit quietly while our members and others were misfed information." (R.295).

- 40% more likely to have their teeth pulled or extracted

- Three times more likely to be physically restrained during dental procedures

(R.294). The investigation showed that at least 14 Kool Smiles patients under the age of ten had 14 or more crowns placed in their mouths. (R.295). "While Kool Smiles was only about 5% of WellCare's dental network, Kool Smiles made up approximately 20% of general dentistry costs." (R.295).

One of GDCH's audits found Kool Smiles had performed a "large number" of tooth restorations on children without anesthesia; excessive treatments during the same visit without some type of sedation; large amounts of local anesthesia given to patients below the proper weight; and one treatment in a Kool Smiles clinic that should have been performed in a hospital. (R.300). Kool Smiles settled the charges with the state in January 2008 for $193,508. (R.300).

*The Press Publicizes the Multitude of Allegations Against Kool Smiles for Improper Child Restraint and Unnecessary Dental Treatment*

An article in an Indiana newspaper in 2009 recounted Georgia's audits of Kool Smiles and several stories from parents about their experiences at Kool Smiles clinics. (R.298-303). One parent was asked by a Kool Smiles dental assistant to help hold down her four-year-old son "as he writhed and screamed," while she listened to "the screams of other children — from behind the closed doors of other rooms." (R.298). Another parent recounted being given the hard sell that her daughter needed steel caps put on four of her baby teeth" and then looking around the Kool Smiles waiting room and seeing children with "every tooth in their mouths was stainless-steel caps, including their front teeth." (R.299).

In the article, another parent recounted having to send her four-year-old son to the procedure room alone because "his mother and grandmother were not allowed to accompany him." (R.301). Then, the parent recounts, "they brought him out screaming. He was soaking wet. . . he was literally

9

saturated from head to toe from crying and sweating." (R.301). The parent then reported that once she was holding the child, he "collapsed and passed out in her arms."[6]

Bloomberg News, in 2012, reported that Kool Smiles is "under Senate scrutiny." (R.1385). This article also discusses Texas's investigation of dentists and dental clinics for "unneeded work" and quotes the general counsel for the Texas State Board of Dental Examiners, who confirmed the investigation including "allegations that dentists placed crowns on children needing only less expensive fillings . . . — at taxpayer expense." (R.1387). "The investigation includes cases involving Kool Smiles . . . according to a spokeswoman for the state Health and Human Services Commission, which oversees Medicaid." (R.1387).

---

[6](R.301). These reports are not alone. Within the record before this Court are 25 affidavits signed by parents of children treated by Kool Smiles's Texas clinics, reporting that their children were "strapped down to a papoose board," "upset, crying, screaming, struggling, and terrified" during the dental treatment, and now have "multiple stainless steel crowns which are ugly and were unwanted." (R.1297-1325).

### *Former Kool Smiles Employee Files Suit Alleging Medicaid Fraud and Unnecessary Treatment*

In 2011, a former employee of Kool Smiles, Dr. Baljot Singh Bains, sued the company. (R.1169). The suit was filed in the United States District Court for the Southern District of Texas against Kool Smiles. (R.1169). Dr. Bains alleged, *inter alia,* wrongful termination and retaliation for reports under the False Claims Act and the Texas Medicaid Fraud Prevention Act. (R.1169).

Dr. Bains specified that Kool Smiles was misdiagnosing and over-diagnosing patients "so that KOOL SMILES could charge the U.S. and TEXAS fees for its services, above and beyond that which was required to completely and effectively treat KOOL SMILES' patients." (R.1164). Dr. Bain also alleged Kool Smiles was using "papoose boards (a device used to immobilize children for dental work) when such restraints were unnecessary." (R.1165). In that case, the District Court granted the parties agreed motion to dismiss.

### *M&B Is Hired to Investigate Kool Smiles*

In February 2011, M&B was hired by several families to investigate their potential claims against Kool Smiles.[7] For the next year, M&B interviewed over 1,600 parents of children who were treated by Kool Smiles. (R.1222). M&B also consulted with pediatric dentists and reviewed extensive public information and media reports regarding dental chains in Texas, including Kool Smiles. (R.1221). M&B filed an Open Records request with the Texas Health and Human Resources Commission and reviewed the data pertaining to Kool Smiles collections of Medicaid reimbursements. (R.1221).

The findings of the investigation included that Kool Smiles is at the center of an important public issue, including the safety of children and the use of public funds. (R.1222). As to the issue regarding the safety of children, M&B concluded that hundreds and maybe thousands of Texas children had

---

[7](R.1221). M&B currently represents more than 600 parents on behalf of Texas children treated by Kool Smiles. (R.1223). These parents allege their children were injured based on Kool Smiles's over-diagnosing cavities, misdiagnosing cavities, performing unnecessary and excessive dental services, wrongfully and excessively restraining the children, and providing dental services falling below the minimum standards of care. (R.1223).

been victimized by Kool Smiles. (R.1223). The investigation concluded that Kool Smiles had provided unnecessary and excessive dental services and had physically restrained children during the process. (R.1221). As to the issue of use of public funds, the investigation concluded that seven of Kool Smiles' Texas-based clinics[8] collected more than $25 million from Medicaid in 2010. (R.1222). When considering all of Kool Smiles Texas-based clinics, Kool Smiles collected from Medicaid more than $64 million in 2010. (R.1222).

In February 2012, M&B filed an application with the State Bar of Texas Advertising Review Committee seeking approval of television, radio, and website advertisements pertaining to Kool Smiles. (R.1231). Thereafter, M&B began advertising, which included publishing a website.[9] M&B also purchased television, radio, and internet advertising. (R.1192-95).

The radio, television, and internet advertising by M&B offered the following questions and statements:

---

[8] These clinics are located in El Paso, McAllen, Weslaco, Mission, Brownsville, Eagle Pass, and Laredo. (R.1222).
[9](R.1190, 1231) (www.koolsmilesclaims.com).

13

- Did you take your child to Kool Smiles?

- Was your child literally strapped down, crying, and terrified?

- Did your child leave Kool Smiles with a mouth full of stainless steel crowns?

- Were you told your child needed extensive dental services, such as multiple stainless steel crowns? Multiple root canals/pulpotomies?

- Did Kool Smiles perform extensive dental work on your child's baby teeth? Why?

- If Kool Smiles cemented crowns on your child's permanent teeth, did they tell you that stainless steel crowns have to be replaced every 10 years on average?

- Did you know your child might be spending thousands of dollars for dental care for the rest of his/her life?

- Approximately 5 years ago, the United States Congress passed legislation that substantially increased Medicaid reimbursements for several children's dental services. The purpose of this legislation was to increase the availability of dental services to underprivileged children. Since the passage of this legislation, hundreds of dental clinics, targeting children eligible for Medicaid, have opened throughout our country. Unfortunately, many of these dental clinics have exploited our children to increase their revenue.

- Kool Smiles has opened over 35 clinics in Texas, including clinics in El Paso, McAllen, Weslaco,

> Mission, Brownsville, Eagle Pass, and Laredo. In 2010, the Kool Smiles clinics in these 7 cities collected more than $25,000,000 in Medicaid reimbursements.

(R.1232-33, 1262-69).

The Advertising Committee sent three letters requesting additional information, which was provided by M&B. (R.1231-32, 1297-1392). Upon receipt of the additional information and minor modifications to the materials, the Committee approved all advertisements. (R.1232, 1278-95). M&B then placed Kool Smiles on notice of claims on behalf of 177 children and requested dental records, radiographs, and invoices on hundreds more. (R.258).

### *Kool Smiles Files a Retaliatory Suit against M&B*

Kool Smiles sent M&B two cease and desist letters (on February 9 and 16, 2012). (R.1237-40). Then, in March 2012, Kool Smiles sued M&B in the United States District Court, Southern District of Texas, Laredo Division. (R.1186). Kool Smiles brought claims based on federal law (trademark infringement, false advertising through a false designation of origin, and cyberpiracy under the Lanham Act) and state law

15

(defamation, business disparagement, injury to business reputation, and trademark dilution). (R.1186, 1575). All of the claims against M&B arise from the television, radio, and internet advertisements and public statements made to the media. (R.7).

### *M&B's Motions to Dismiss & Request for a Hearing*

M&B filed a motion to dismiss under Texas's Anti-SLAPP statute, *i.e.,* Texas Citizen Participation Act, Texas Civil Practice and Remedies Code Section 27.001 (hereinafter referred to as "TCPA").[10] M&B also sought dismissal under Federal Rules of Civil Procedure 8(a) and 12(b)(6). (R.197). As mentioned in the Statement of Jurisdiction, M&B only seeks interlocutory review of the TCPA Motion. M&B requested a hearing on its TCPA Motion, pointing out that Section 27.004 of the TCPA requires a hearing 30 days after the filing of the motion to dismiss. (R.1545).

---

[10](R.251). The TCPA allows for pre-discovery dismissal where the defendant can show the claim relates to the defendant's exercise of free speech. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003-.005.

### *District Court Denies M&B's Hearing & Motions to Dismiss*

The District Court denied M&B's request for a hearing, (R.1580), and denied M&B's Motion, concluding:

- The TCPA did not apply to Kool Smiles' federal claims, (R.1577); and

- As to Kool Smiles's state court claims, the TCPA does apply to protect M&B's speech.[11]

M&B filed a notice of appeal to this Court. (R.1642). Thereafter, the District Court granted M&B's Motion to Stay the case during the pendency of this appeal. (Dkt.42).

---

[11](R.1578). The District Court also denied M&B's Rule 8 and 12 Motion to Dismiss, finding Kool Smiles's pleadings sufficient. (R.1578-80). These rulings are not a part of this appeal.

17

## SUMMARY OF THE ARGUMENT

This case presents the question of whether Kool Smiles's state court causes of action (defamation, business disparagement, etc.) should be dismissed because they relate to M&B's right to free speech and right to petition. TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011. The District Court denied the Motion. (R.1578). M&B contends this Court should reverse the District Court's ruling, render judgment that Kool Smiles's state court claims are dismissed, and remand to the District Court for a determination of fees and expenses. M&B seeks this relief for a multitude of reasons.

First, the District Court denied M&B's Motion as to Kool Smiles's state court claims, concluding M&B's speech fell within the TCPA's narrow "commercial speech" exemption. *Id.* § 27.010(b). The TCPA's exemption, which is worded similarly to California's law, does not exempt M&B's speech from the Anti-SLAPP protection afforded by the TCPA. *See Simpson Strong-Tie Co. v. Gore,* 49 Cal.4th 12, 230 P.3d 1117 (Cal. 2010) (holding attorney advertisements did not fall within

commercial speech exemption in California's Anti-SLAPP statute).

Second, M&B presented evidence (over 1,000 pages of documents and affidavits) showing its speech related to a "matter of public concern," which the TCPA defines as matters related to "health or safety," "economic or community well-being," "the government," or a "good, product, or service in the marketplace." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). The evidence submitted by M&B to the District Court shows M&B's speech, upon which Kool Smiles's lawsuit is based, regarded the *safety* of children, who were being subjected to unnecessary and painful dental treatment, emotional trauma, and physical restraint; public funding received by Kool Smiles, a company facing allegations of Medicaid fraud by governmental and media reports since 2007, which called into question *economic and community wellbeing*, as well as the *government*; and the quality and legitimacy of a *service in the marketplace* offered by Kool Smiles. *See id.* § 27.001(3).

Third, the record shows Kool Smiles's claims relate to M&B's "right to petition" because M&B's communications pertain to or "enlist participation in" a "judicial proceeding," are "in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body," and are "likely encourage consideration or review by an issue by a legislative, executive, judicial, or other governmental body." *See id.* § 27.001(4).

Fourth, Kool Smiles failed to carry its burden of proof of presenting "clear and specific" evidence of every element of its defamation, business disparagement, injury to business reputation, and trademark dilution claims against M&B. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). At the outset, the evidence shows Kool Smiles claims are barred because M&B's speech is both true (a complete defense) and protected by the Judicial Proceeding Privilege. Moreover, the evidence submitted by Kool Smiles falls far short of its burden of demonstrating each and every element of its claims by "clear and specific" evidence.

20

# **ARGUMENT**

## **I.**
## **Standard of Review**

Texas law governs this diversity case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Welborn v. State Farm Mut. Auto. Ins. Co.*, 480 F.3d 685, 687 (5th Cir. 2007) (per curiam); *Henry,* 566 F.3d at 168-69 (holding Louisiana law governed federal case involving Anti-SLAPP dismissal motion); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999) (concluding California Anti-SLAPP law applied). This Court reviews the District Court's denial of M&B's Anti-SLAPP Motion *de novo. Henry,* 566 F.3d at 168-69.

## **II.**
## **The Texas Consumer Participation Act**

Since the mid-1990's, the majority of states and jurisdictions have enacted Anti-SLAPP statutes.[12] Texas

---

[12]Charles D. Tobin, *Help Restore Balance to Free Expression in Litigation with Anti-SLAPP Statutes,* Communications Lawyer (June 2012). These include: Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Guam, Hawaii, Illinois, Indiana, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, Nebraska, Nevada, New Mexico, New York, Oklahoma, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Vermont,

enacted the TCPA in 2011, with the Texas Legislature explaining that the purpose of the Act is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. The TCPA provides a means for a defendant, early in the lawsuit, to seek dismissal of certain claims identified in the act. *See id.* §§ 27.003, 27.008.

## A. *The Purpose & Express Intent Behind the TCPA*

The TCPA is broad in scope, allowing dismissal if the lawsuit "is based on, relates to, or is in response to a party's exercise of the right to free speech, right to petition, or right of association." *Id.* § 27.003(a). The TCPA contains definitions for all material terms, *id.* § 27.001, and includes three narrow exemptions, none of which apply to the case before this

---

Washington, West Virginia, and Texas. *See* www.anti-slapp.org (last visited January 10, 2012).

Court.[13] The Texas Legislature expressly provided within the TCPA that the Act "should be construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b).

## B.    *TCPA's Burden-Shifting Procedure*

The TCPA gives a defendant the right to file a motion to dismiss if it believes the lawsuit was filed in response to the defendant's exercise of free speech, right to petition, or right to associate. *Id.* § 27.003(a). The motion must be filed 60 days after service of the lawsuit. *Id.* § 27.003(b). The filing of the motion stays discovery. *Id.* § 27.003(c).

The TCPA establishes a burden-shifting procedure to be utilized by the trial court when considering the motion and response. *Id.* § 27.005. First, the burden is on the defendant to prove, by a preponderance of the evidence, that the legal action filed against it "is based on, relates to, or is in response to" a party's exercise of:

(1)    the right to free speech;

---

[13] *Id.* § 27.010 (exempting enforcement actions brought by the State or a county, actions brought against a person primarily engaged in selling or leasing goods or services, and actions seeking recovery for bodily injury or wrongful death). None of the exemptions apply to this case.

(2)    the right to petition; or

(3)    the right to association.

*Id.* §§ 27.003(a), 27.005(b). If this burden is carried, the motion must be granted. *Id.* However, if the plaintiff "establishes by clear and specific evidence a prima facie case for each essential element of the claims in question," then the trial court should deny the motion to dismiss. *Id.* § 27.005(c).

## III.
## The District Court Erroneously Concluded M&B's Speech Was Exempted by the TCPA

The District Court's Denial Order contains two rulings: (1) state Anti-SLAPP statutes do not apply to federal causes of action;[14] and (2) as to Kool Smiles's remaining state law causes of action,[15] the TCPA does not apply because M&B's speech

---

[14]The District Court rejected Kool Smiles's overbroad argument that state Anti-SLAPP statutes never apply in federal court; the District Court's rejection of this argument is consistent with the rulings from this Court, *Henry*, 566 F.3d at 164; *see also Brown v. Wimberly,* No. 11–1169, 2011 WL 5438994, *1 (E.D.La. Nov. 9, 2011); *Armington v. Fink*, No. 09–6785, 2010 WL 743524, *3 (E.D.La. Feb. 24, 2010), as well as the holdings of the First and Ninth Circuit Courts of Appeals. *Godin v. Schencks*, 629 F.3d 79 (1st Cir. 2010); *United States ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999).

[15](R.1577). Kool Smiles brought claims based on federal law (trademark infringement, false advertising through a false designation of origin, and cyberpiracy under the Lanham Act) and state law (defamation, business disparagement, injury to business reputation, and trademark dilution). (R.1186, 1575).

falls within the TCPA's exemption for "commercial speech." (R.1577-79). M&B appeal does not appeal the District Court's first ruling regarding Kool Smiles's federal causes of action. Rather, M&B contends it was erroneous for the District Court to conclude Kool Smiles's state law causes of action survived based on the TCPA's "commercial speech" exemption.

After concluding the TCPA is inapplicable to Kool Smiles's federal claims, the District Court moved on to consider whether Kool Smiles's state court claims should be dismissed.[16] As to the remaining claims, the District Court ruled that the TCPA's "commercial speech" exemption rendered the TCPA inapplicable to M&B's speech. (R.1578). Thus, Kool Smiles's state claims were not dismissed. (R.1578).

---

[16]Kool Smiles's argument that TCPA allows only for the dismissal of an entire lawsuit, as opposed to "piecemeal" dismissal of some causes of action, ignores the plain language of the TCPA. The TCPA states that, upon a defendant carrying its burden of proof, "a court shall dismiss a legal action against the moving party." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). The TCPA defines "legal action" as "a lawsuit, **cause of action**, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." *Id.* § 27.001(6) (emphasis added). Thus, by using the term, "cause of action," in addition to the term, "lawsuit," the Texas Legislature makes clear that a part of a lawsuit may be dismissed under the TCPA. *See Louisiana Crisis Assistance Ctr. v. Marzano-Lesnevich,* — F.Supp.2d —, 2012 WL 2717075, *3-4 (E.D. La. 2012) (ruling individual causes of actions can be dismissed based on Louisiana's Anti-SLAPP law).

The District Court's interpretation of the TCPA not only ignores the plain language and legislative history of the TCPA, but also contradicts persuasive authority from the California Supreme Court interpreting California's similarly-worded exemption. *See Simpson Strong-Tie Co. v. Gore,* 49 Cal.4th 12, 230 P.3d 1117 (Cal. 2010) (interpreting California's Anti-SLAPP law).

## A.    *The District Court's Interpretation of Section 27.010 Is Overbroad and Leads to an Unintended Result*

Kool Smiles argued to the District Court that the TCPA contains a "commercial speech" exemption. (R.1437). This provision states:

> This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(b). No Texas or federal court has interpreted this exemption.

26

The District Court adopted Kool Smiles's statutory construction of the provision and concluded M&B's speech was exempted from the TCPA. (R.1578). But, the District Court ignored the plain language and legislative history of the TCPA.[17] The aim of the TCPA is to quickly dispose of frivolous lawsuits aimed at silencing citizens who are participating in the free exchange of ideas and frivolous lawsuits aimed at retaliating against someone who exercises the person's right of association, free speech, or right of petition. House Comm. on Judiciary and Civil Jurisprudence, Bill Analysis, Tex. HB 2973, 82nd Leg., R.S. (2011). When considering the exemption's plain language within the context of the purpose of the TCPA, it is clear the Texas Legislature envisioned the exemption applying in customer-retailer disputes. For example, when a customer sues a car dealer for violations of the Texas Deceptive Trade Practices Act, alleging the car dealer

---

[17]In construing statutes, the Supreme Court of Texas's primary objective is to give effect to the Legislature's intent. *Tex. Lottery Comm'n v. F. State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). This Court will rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning leads to absurd results. TEX. GOV'T CODE ANN. § 311.011.

misrepresented the quality of the car. In that circumstance, the car dealer cannot avail itself of a TCPA motion to dismiss.

Here, M&B is not being sued by a former client or a potential client. Rather, the entity suing M&B is a national chain of dental clinics. Moreover, in this case, the basis of Kool Smiles's lawsuit is not "the statement or conduct" by M&B offering M&B's legal services. Rather, Kool Smiles's claims stem from statements made about Kool Smiles's poor dental work and Kool Smiles's conspiratorial scheme preying upon Medicaid recipients. (R.11-36). In other words, Kool Smiles's claims do not arise from any of M&B's statements offering legal services to potential clients because there was nothing, in and of itself, defamatory or illegitimate about whether M&B are lawyers who can provide legal services to customers.

Kool Smiles twisted the exemption, meant to protect consumers who were victimized by a company's misstatements, into a pretzel to argue its applicability to M&B's statements. The plain language does not support Kool Smiles's interpretation, the legislative history does not support

Kool Smiles's interpretation, and adoption of Kool Smiles's interpretation leads to an absurd result.

**B.** ***The California Supreme Court, Interpreting a Similarly-Worded Exemption, Held the Exemption Inapplicable to Attorney Advertisements***

Other than the District Court in this case, no state or federal court has interpreted the TCPA's exemption. Case law interpreting a similar provision, however, conflicts with Kool Smiles's argument and the District Court's ruling. *See Simpson Strong-Tie Co. v. Gore,* 49 Cal.4th 12, 230 P.3d 1117 (Cal. 2010) (interpreting California's Anti-SLAPP law). In *Simpson,* the high court of California interpreted California's similarly-worded exemption.[18] The California Supreme Court held the provision did not exempt attorney advertisements from the protections of the Anti-SLAPP law. *Id.*

[18]Section 425.17(c) of California's Anti-SLAPP law states the law: "does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person if both of the following conditions exist: (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services; and (2) The intended audience is an actual buyer or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual buyer or customer."

In *Simpson,* the manufacturer of galvanized screws sued an attorney for defamation, trade libel, false advertising, and unfair business practices. *Id.* at 16. The manufacturer's suit was based on an attorney's newspaper ads that were "directed to owners of wood decks constructed after January 1, 2004", "advised readers that you may have certain legal rights and be entitled to monetary compensation", and "invited those person to contact [the attorney] if you would like an attorney to investigate whether you have a potential claim." *Id.* "The common theme among the causes of action is the allegations that the advertisement 'communicates that Simpson's galvanized screws are defective.'" *Id.* at 30.

The California Supreme Court granted review to consider whether California's anti-SLAPP statute exempted the attorney's speech because he was a seller of "goods and services" and made the speech "in the course of delivering the person's goods or services." *Id.* at 17. In *Simpson,* the attorney, like M&B in this case, learned from television reports and government investigations about the wrongdoing of a

30

company. *Id.* at 17-19. In *Simpson,* the attorney, like M&B, conducted an extensive investigation and learned of other lawsuits involving the company in question. *Id.* at 17-19. In *Simpson,* the attorney, like M&B, arranged for advertising to locate individuals who had been victimized by the company. *Id.*

The California Supreme Court held that it was the plaintiff's burden to prove the speech in question fell within the commercial speech exemption. *Id.* at 22-23. As in the *Simpson* case, Kool Smiles has failed to demonstrate that M&B's speech is exempted by the TCPA. Because the District Court erroneously interpreted the TCPA, this Court should reverse the Denial Order.

In the case currently before this Court, the District Court erroneously interpreted the statute. As a result, the District Court wrongfully concluded M&B's fell outside the protections of the TCPA. This Court should therefore vacate the District Court's Order.

**IV.**
**This Court Should Render Judgment for M&B Because**
**Kool Smiles Lawsuit Relates to M&B's Right to Free**
**Speech and Petition**

The District Court, by ruling that M&B's speech was exempted by the TCPA, did not address whether Kool Smiles's lawsuit relates to M&B's right to free speech and petition or whether Kool Smiles carried its burden of proving a prima facie case for its claims. (R.1578) ("For these reasons, if the TCPA reaches any of Kool Smiles' state law claims, Mauzé & Bagby's conduct at the heart of those claims is exempt from any protection offered under the TCPA"). As argued above, the District Court's Order should be reversed because it is based on erroneous findings and conclusions.

Additionally, this Court should render judgment for M&B because the record demonstrates M&B carried its TCPA burden of demonstrating by a preponderance of the evidence that Kool Smiles's lawsuit "is based on, relates to, or is in response to" M&B's right to free speech and petition. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). The record also shows Kool Smiles failed to carry its burden of establishing "by clear

and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c).

## A. The Texas Legislature Defined "Free Speech" and "Right to Petition" Broadly

The Texas Legislature provided the TCPA "should be construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b). In this case, M&B's speech falls squarely within the broad definitions of "right to free speech" and "right to petition." M&B contends the TCPA applies because Kool Smiles's lawsuit "is based on, relates to, or is in response to" M&B's exercise of: (1) the "right of free speech"; or (2) the "right to petition." (R.251). The TCPA provides definitions for these terms. *Id.* § 27.001.

The TCPA defines "right to free speech" as:

> A communication made in connection with a matter of ***public concern***.

*Id.* § 27.001(3) (emphasis added). The TCPA defines "matter of public concern" very broadly:

> "Public concern" includes an issue related to:
>
> (A)    Health or safety;

> (B)  Environmental, economic, or community well-being;
>
> (C)  The government;
>
> (D)  A public official or public figure; or
>
> (E)  A good, product, or service in the marketplace

*Id.* § 27.001(3). In this case, almost all prongs of the definition of "public concern" are triggered based on M&B's speech about child endangerment, Medicaid fraud, and the "service in the marketplace" offered by Kool Smiles.

The TCPA also defines the "right to petition" very broadly, including the following definitions:

> A communication pertaining to a judicial proceeding;
>
> A communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body;
>
> A communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body; or
>
> A communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by legislative, executive, judicial, or other governmental body.

34

*Id.* § 27.001(4).

**B.** ***Kool Smiles's Lawsuit Is Based on, Relates to, or Is in Response to M&B's Right to Free Speech***

The speech underlying Kool Smiles's lawsuit relates to four of the five TCPA definitions of "a matter of public concern", including the issues of:

(A)   health or safety;

(B)   environmental, economic, or community well-being;

(C)   the government; and

(E)   a good, product, or service in the marketplace.

*Id.* § 27.001(3).

M&B attached to its Motion 45 exhibits, comprising over 1,000 pages of evidence in support of dismissal of Kool Smiles's lawsuit. (R.291-1409). Included is a Congressional Report from the Committee on Oversight and Government Reform, issued in 2012, focusing on "uncovering waste, fraud, and abuse in the Medicaid Program." (R.325). This Report discusses how Medicaid spending has grown by 450% and

costs American taxpayers $457 billion a year, (R.327, 329), is considered by the federal government to be a "high risk" program, (R.327), and that the federal government has declared that "fraud, waste, and abuse represent a persistent, pervasive threat to the integrity of Medicaid."[19] This Report also zeroed in on Medicaid fraud by dental providers, noting that the State of Texas presents "numerous examples of egregious fraud and abuse within the Medicaid dental program." (R.341).

M&B also attached other evidence showing that Kool Smiles's lawsuit was based on M&B's speech that related to matters of public concern, including:

- A United States Department of Justice news release (and an ABC News Report) about a similarly-situated dental chain settling a Medicaid fraud claim for $24 million, (R.308-10);

---

[19](R.330). M&B also attached a CNBC news report discussing how 107 health care providers were charged in seven cities for $452 million in Medicaid fraud. (R.348).

- A South Carolina Department of Health & Human Services news release about dental Medicaid fraud, (R.312);

- A San Antonio news release about The Smile Center, another pediatric dental chain with clinics in Texas, facing allegations of poor dental treatment and potential Medicaid fraud, (R.314); and

- A San Antonio news report about a Texas dental clinic banned from receiving Medicaid payments and penalized $6.6 million.

(R.345).

Moreover, the evidence shows Kool Smiles has been in the news for quite some time, facing allegations related to poor and unnecessary dental treatment to children and Medicaid fraud. M&B also attached evidence to its Motion, including:

- A 2012 letter from the Texas Attorney General confirming Kool Smiles is under investigation for Medicaid fraud, (R.1175), as well as evidence that Kool Smiles's Texas

clinics collected over $64 million in Medicaid reimbursements in 2010 alone, (R.351-1160);

- A federal complaint (filed in the Southern District of Texas) by a former Kool Smiles employee alleging retaliatory discharge for reporting that Kool Smiles "was conspiring  to and was committing fraud and making false claims against the U.S. and TEXAS in violation of the FALSE CLAIMS ACT and the TEXAS MEDICAID FRAUD PREVENTION ACT," (R.1162);

- A 2007 news release from the Georgia Department of Community Health, reporting it is investigating Kool Smiles for "unusual patterns of patient restraint," "over-utilization of stainless steel crowns," and "poor care delivery," (R.292);

- A news release from WellCare (a government health care provider), providing its investigation of Kool Smiles revealed "startling facts," including that children treated by Kool Smiles were "five times more likely to receive crowns," "four times more likely to receive five or more

crowns," "40% more likely to have teeth pulled," and "three times more likely to be physically restrained," (R.294);

- A 2012 Bloomberg Report advising that Kool Smiles is "under Senate scrutiny," (R.1385), as well as under investigation by the State of Texas, (R.1387);

- An article from the Journal Gazette, detailing the stories of distraught parents whose children were treated by Kool Smiles, (R.298); and

- An article from Access North Georgia, recounting Georgia's audit of Kool Smiles;

(R.305).

In sum, the evidence submitted by M&B shows the relevant speech, upon which Kool Smiles's lawsuit is based, regarded the **safety** of children, who were being subjected to unnecessary and painful dental treatment, emotional trauma, and physical restraint; public funding received by Kool Smiles, who has faced allegations of Medicaid fraud by governmental and media reports, which called into question **economic and**

**community wellbeing**, as well as the **government**; and the

quality and legitimacy of a **service in the marketplace**[20]

offered by Kool Smiles. *See id.* § 27.001(3).

**C.**   **Kool Smiles's Lawsuit Is Based on, Relates to, or Is in Response to M&B's Right to Petition**

Kool Smiles's lawsuit also relates to M&B's "right to

petition." *See id.* § 27.001(4). The evidence listed above shows

that the speech by M&B underlying Kool Smiles's lawsuit

constitutes a: (1) communication pertaining to an ongoing

judicial proceeding or to enlist the public in participation in a

judicial proceeding, (R.1220-35) (Affidavits of Appellants

averring that the communications referred to ongoing

litigation, were to enlist participation by the public in future

litigation, and were to enlist public participation in an effort to

effect review of Kool Smiles's conduct by governmental and

judicial bodies); (2) a communication in connection with an

issue under consideration or review by a legislative, executive,

---

[20]In *Avila v. Larrea,* — S.W.3d —, 2012 WL 6633944, *6 (Tex. App. — Dallas 2012, no pet.), the appellate court reversed the trial court's denial of a TCPA motion to dismiss, holding that a former client's public statements criticizing a lawyer's work in a case and potentially violating ethical rules was "a matter of public concern" because the statements were about "a good, product, or service in the marketplace."

judicial, or other governmental body, (R.1175, 1385-87) (letter advising of the two ongoing investigations of Kool Smiles by the Texas Attorney General); and (3) a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body, (R.1175, 1220-35, 1385-87) (averring that M&B's speech regarded the Texas Attorney General's ongoing investigations of Kool Smiles and that M&B's speech was made to encourage further investigation of Kool Smiles by other governmental bodies, including the Texas State Board of Dental Examiners, the Inspector General of the Texas Health and Human Services Commission, as well as several Departments within the Texas Attorney General's Office, such as the Medicaid Fraud Control Unit, the Consumer Protection Unit).

### D. *Other Courts Have Dismissed Dental Clinics' SLAPP Lawsuits Under Similar Circumstances*

Courts have previously granted TCPA motions to dismiss in this type of circumstance, (R.1251-57), including granting a TCPA motion to dismiss in a case wherein a San Antonio-based law firm had made statements regarding The Smile

Center, another dental clinic facing allegations of child
mistreatment and Medicaid fraud. (R.1257).

## V.
### Kool Smiles Failed to Carry Its Burden of Proving Every Element of Its Claims by "Clear and Specific Evidence"

As demonstrated above, M&B carried its TCPA burden of
proof, requiring dismissal of Kool Smiles's claims. At this
point, the burden shifts to Kool Smiles to "establish[] by clear
and specific evidence a prima facie case for each essential
element." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). In this
prong of the analysis, the court shall consider all "the
pleadings and supporting and opposing affidavits stating the
facts on which liability or defense is based."[21]

The TCPA does not define "clear and specific evidence."
*Id.* § 27.001. Another Texas statute, enacted for a similar
purpose,[22] provides guidance for the quantum of evidence
intended by the phrase "clear and specific evidence." *Id.* §

[21]*Id.* § 27.006(a). Because the TCPA specifically requires the court to
consider all pleadings and **supporting** and **opposing affidavits**
in determining whether dismissal is warranted, Kool Smiles's argument
below that the court need only look to **its** pleadings and affidavits is
incorrect. *Compare id.* § 27.006(a), *with* (R.1443).

[22]Like the TCPA, one of the stated purposes of the Texas Free Flow of
Information Act is to protect the public. TEX. CIV. PRAC. & REM. CODE ANN.
§ 22.022.

42

22.024 (The Texas Free Flow of Information Act ["TFFIA"]). The TFFIA, in defining the "clear and specific" showing that must be made in order to compel a reporter to testify, specifies that the party seeking disclosure must establish that "the information outweighs the public interest in gathering and dissemination of [the] news[.]" *Id.* § 22.024.

**A.     *This Court Need Not Examine Kool Smiles's Evidence Because the Record Proves the Absolute Judicial Proceeding Privilege Immunized M&B's Statements***

As the District Court noted, all of Kool Smiles's claims, state and federal, are premised on M&B's internet, radio, and television-based speech. (R.1575). The District Court stated M&B "engaged in an advertisement campaign soliciting former Kool Smiles patients." *Id.* As the record reflects, these advertisements were reviewed and approved by the State Bar of Texas Advertising Review Committee. (R.1232, 1278-95).

It is well-settled in Texas that "[c]ommunications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *Bell v. Lee*, 49 S.W.3d 8,

10 (Tex. App.—San Antonio 2001, no pet.) (citing *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982)). "This absolute privilege extends to a communication preliminary to a proposed judicial proceeding . . . if it has some relation to the proceeding." *Bell*, 49 S.W.3d at 10. "All doubt should be resolved in favor of  the communication's relation to the proceeding." *Id.* at 10-11.

The absolute privilege applies whether the allegations involve libel or slander, and regardless of whether the statements made "are false and are uttered or published with express malice." *Russell v. Clark*, 620 S.W.2d 865, 868 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.) (citing *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909 (1942)). "This doctrine is founded on public policy, and it is considered in the interest of public welfare that all persons should be permitted to utter their sentiments and speak their thoughts freely and fearlessly upon all questions and subjects[.]" *Russell*, 620 S.W.2d at 868.

This Court recognizes the absolute judicial proceeding privilege. *Brown,* 477 Fed. Appx. at 216-17 (affirming district court's Anti-SLAPP dismissal of defamation claim based on the judicial proceeding privilege). Texas courts have extended the absolute privilege to "out-of-court communications made by attorneys preliminary to a judicial proceeding, or in connection therewith[.]"*Russell,* 620 S.W.2d at 868. According to the court in *Russell:*

> Public policy demands that attorneys be granted the utmost freedom in their efforts to represent their clients. To grant immunity short of absolute privilege to communications relating to pending or proposed litigation, and thus subject an attorney to liability for defamation, might tend to lessen an attorney's efforts on behalf of his client. The conduct of litigation requires more than in-court procedures. An attorney must seek discovery of evidence, interrogate potential witnesses, and often resort to ingenious methods to obtain evidence; thus, he must not be hobbled by the fear of reprisal by actions for defamation.

*Id.*; *accord Thomas v. Bracey,* 940 S.W.2d 340, 344 (Tex. App.—San Antonio 1997, no writ).

It is undisputed that M&B's speech relates specifically to

45

a judicial proceeding; namely, the dental services litigation. (R.1220-35, 1248). Regardless of the "purpose in publishing" the statements, M&B's "belief in its truth," or its "knowledge of its falsity," the statements are protected by the absolute privilege. *Id.* Any other conclusion would lead to a chilling effect on an attorney's ability to prepare a case for litigation and advocate for his client.[23] Because M&B was protected by this absolute privilege, Kool Smiles's claims could not survive and the District Court erred in holding otherwise.

**B.    *Kool Smiles Did Not Establish by Clear and Specific Evidence a Prima Facie Case for Each Essential Element of Its Claims***

**1.    The Defamation Claim**

The elements of defamation are:

- the defendant published a statement of fact;

- the statement was defamatory;

---

[23]*See Russell*, 620 S.W.2d at 868. The *Rhodes College* case cited by Kool Smiles below is distinguishable because the attorney in that case made express statements against the college that were both affirmatively disparaging and not established to be true, neither of which is the situation here. *Rhodes College, Inc. v. Johnson*, No. 3:10-CV-0031-D, 2012 WL 627273, at *6-7 (N.D. Tex. Feb. 27, 2012). Further, had the attorney shown that the website was intended to attract new clients, the privilege would have applied. *Id.* Here, it is undisputed that M&B's website and advertisements were intended to do so.

- the statement was false;

- the defendant acted with actual malice and/or negligently in publishing the false and defamatory statement; and

- the plaintiff suffered damages as a result.

*WFAA- TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

### a.    M&B's Speech Is True

At the outset, this Court may avoid analyzing the varying elements of a defamation claim because the speech complained of by Kool Smiles is true, and truth is a complete defense[24] to a defamation claim. (R.269-71, 291-343, 352-1174, 1219-35, 1296-1325, 1346-82, 1401-03) (including letter from Texas Attorney General confirming existence of two Medicaid fraud investigations against Kool Smiles and 25 affidavits signed by parents of children treated by Kool Smiles's Texas clinics, reporting that their children were "strapped down to a papoose board", "upset, crying,

---

[24] *See* TEX. CIV. PRAC. & REM. CODE § 73.005; *Randall's Food Market, Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995); *Rodriguez v. NBC Bank*, 5 S.W.3d 756, 766, n.10 (Tex. App.—San Antonio 1999, no pet.) ("A showing of substantial truth at a summary judgment hearing will defeat a defamation claim.").

screaming, struggling, and terrified" during the dental treatment, and now have "multiple stainless steel crowns which are ugly and were unwanted").

For example, the following questions or statements are complained of by Kool Smiles:

> *Did you take your child to Kool Smiles?*

The evidence shows thousands of parents took their children to Kool Smiles. (R.269, (R.253, 352-1160, 1219-35, 1296-1325).

> *Was your child literally strapped down, crying and terrified?*

The evidence shows children were strapped down, crying, and terrified. (R.269, 291-96, 304-06, 1161-74, 1296-1325).

> *Did your child leave Kool Smiles with a mouth full of stainless steel crowns?*

The evidence shows children received stainless steel crowns. (R.269, 293-96, 304-06, 352-1160, 1296-1325).

> *If so, you may have a claim.*

The evidence shows parents and children have claims.

(R.269, 1219-1235).

Additionally, the statements, most of which were simply questions as opposed to statements of fact, made by M&B on the website are true or substantially true:

➢ *Was your child strapped down to a papoose board?*

The evidence shows children were strapped down, crying and terrified. (R.269-70, 291-96, 304-06, 1161-74, 1296-1325).

➢ *Was your child upset, crying, terrified, or traumatized?*

The evidence shows children were upset, crying, terrified, or traumatized. (R.270, 304-06, 1296-1325).

➢ *Does your child have a mouthful of stainless steel crowns?*

The evidence shows children received stainless steel crowns. (R.270, 293-96, 304-06, 352-1160, 1296-1325).

➢ *Were you told your child needed extensive dental services, such as: multiple stainless steel crowns? Multiple root canals/pulpotomies?*

The evidence shows children received extensive dental services including multiple stainless steel crowns and/or multiple pulpotomies. (R.270, 293-96, 304-06, 352-1174

1296-1325).

➢ *Did Kool Smiles perform extensive dental work on your child's baby teeth? Why?*

The evidence shows children received stainless steel crowns on their primary (baby) teeth. (R.270, 293-96, 304-06, 352-1174 1296-1325).

➢ *If Kool Smiles cemented crowns on your child's permanent teeth, did they tell you that stainless steel crowns have to be replaced every 10 years on average?*

The evidence, including dental literature, indicates that stainless steel crowns have to be replaced every 10 years on average. (R.270, 1326-45).

➢ *Did you know your child might be spending thousands of dollars for dental care for the rest of his/her life?*

The evidence shows replacement of stainless steel crowns is expensive and on average will need to be replaced every 10 years. (R.270, 1326-45).

➢ *Approximately 5 years ago the United States Congress passed legislation that substantially increased Medicaid reimbursements for several children's dental services. The purpose of this legislation was to increase the availability of dental services to underprivileged children. Since the passage of this legislation, hundreds of dental clinics, targeting children eligible for Medicaid, have opened throughout our country. Unfortunately, many of these*

*dental clinics have exploited our children to increase their revenue.*

The evidence shows these statements to be true. (R.270-71, 291-343, 1346-82, 1401-03).

➤ *Kool Smiles has opened over 35 clinics in Texas, including clinics in El Paso, McAllen, Weslaco, Mission, Brownsville, Eagle Pass and Laredo. In 2010, the Kool Smiles clinics in these 7 cities collected more than Twenty Five Million Dollars ($25,000,000.00) in Medicaid reimbursements.*

The evidence shows these statements to be true. (R.271, 352-1160, 1380-82).

➤ *The Medicaid reimbursements for children's dental services increased dramatically in 2007. Kool Smiles opened over 100 clinics since 2007 and now have 38 clinics in Texas. Many dental clinics opened to target underprivileged children with Medicaid and exploit these children to increase their revenue. Kool Smiles' clinics in the 7 cities identified collected over $25,000,000.00 from Medicaid in Texas in 2010 and millions more in 2009 and 2011.*

The evidence shows these statements to be true. (R.271, 291-343, 350-1160, 1346-82, 1401-03).

Moreover, the statements made by M&B to the public media were true or substantially true, as reflected by the following citations to record evidence:

➤ "We have and will be able to present over 1,000

51

parents whose children were subjected to being strapped down to papoose boards and physically restrained for what was not extensive dental care." (R.271, 1219-25).

> "The complaints we are receiving is the fact that children were strapped down to boards and restrained. Many of them were blindfolded with socks on their hands. There were many instances of children typically screaming, crying, and struggling during the procedure and the parents felt they were not adequately sedated." (R.271, 1219-25).

Additionally, the evidence shows the State Bar of Texas Advertising Review Committee approved the advertising after M&B submitted information substantiating the contents of the advertisements. (R.271-72, 1226-35, 1276-95). Accordingly, because M&B established that the advertisements were true or substantially true, Kool Smiles cannot prove every element of a defamation claim, and the District Court erred in refusing to dismiss the lawsuit.

### b.    M&B Did Not Make "Statements of Fact"

Notwithstanding the evidence disproving the falsity of M&B's speech, Kool Smiles also fails because it cannot prove the first element of a defamation claim — that the language complained-of is a "statements of fact." For a statement to be

actionable, it must assert facts that are objectively verifiable. *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002). The content of M&B's speech did not assert facts because the speech merely posed questions to viewers or readers about their children's experiences at Kool Smiles. (R.265-66).

Moreover, that the statements either mention Kool Smiles by name or include the Kool Smiles logo does not *ipso facto* render the statements defamatory. (R.1444). There is no law that forbids M&B from making statements about Kool Smiles (as long as those statements are non-defamatory), and the ability to do so is at the foundation of M&B's constitutional rights. Besides, Kool Smiles's subjective, personal interpretation linking the factual information portrayed in the advertisements to itself cannot change a statement that is not readily understandable as affecting Kool Smiles reputation into a statement that is defamatory. *Durckel v. St. Joseph Hosp.*, 78 S.W.3d 576, 585 (Tex. App. Houston—[14th Dist.] 2002, no pet.) ("Innuendo, however, does not permit a plaintiff to change the meaning, extend the meaning, or impose a strained

construction on the words"); *Montgomery Ward & Co. v. Peaster*, 178 S.W.2d 302, 305 (Tex. Civ. App.—Eastland 1944, no writ) (if language is required to prove it is defamatory, it is not defamation *per se*). Thus, the meaning that Kool Smiles subjectively ascribes and infers is insufficient to establish a defamatory meaning.

### c.    M&B's Speech Was Not "Defamatory"

The crux of Kool Smiles's argument is that M&B statements were defamatory because they are false. (R.1445-53). But, in Texas, a statement that may be "false, abusive, unpleasant, or objectionable" to the plaintiff may not be defamatory in light of the surrounding circumstances. *Columbia Valley Reg'l Med. Ctr. v. Bannert*, 112 S.W.3d 193, 198 (Tex. App.—Corpus Christi 2003, no pet.); *accord Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987).

Courts must construe the statements at issue as a whole, in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire

statement, not how Kool Smiles interprets the statements. *See Columbia*, 112 S.W.3d at 198 (citing *Turner v. KTRK Television Inc.*, 38 S.W.3d 103, 114 (Tex. 2000)); *Musser*, 723 S.W.2d at 655.[25]

Kool Smiles claimed that the M&B advertisements were defamatory as both slander *per se* and slander *per quod*.[26] Neither argument has merit. (R.1445-48).

### i.    No *Per Se* Slander

"To be considered slander *per se*, the statement must:

- impute the commission of a crime;

- impute contraction of a loathsome disease;

- cause injury to a person's office, business, profession, or calling; or

---

[25] *See Overstreet v. Underwood*, 300 S.W.3d 905, 910 (Tex. App.–Amarillo 2009, pet. denied); *Arant v. Jaffe*, 436 S.W.2d 169, 176-77 (Tex. Civ. App.–Dallas 1968, no writ) (affirming summary judgment, holding plaintiff's allegation that statement accused her of being a thief and committing a crime were not substantiated by the proof; test is what construction would be placed upon statement by average reasonable person or general public, not the plaintiff); *Simmons v. Ware*, 920 S.W.2d 438, 451 (Tex. App.–Amarillo 1996, no writ) (looking through witness's specific knowledge and understanding does not constitute interpretation of reasonable, average person for determination of whether defamatory).

[26] *Per se* is defined as "of, in, or by itself; standing alone." Black's Law Dictionary 1178 (8th ed. West 2004). *Per quod* is Latin for "whereby," and is defined as "requiring reference to additional facts." Black's Law Dictionary 1177 (8th ed. West 2004).

- impute sexual misconduct."

*Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). Use of words like "liar," "crook," "phony," and "cheat" are not actionable as per se slander. *Billington v. Houston Fire & Cas. Ins. Co.*, 226 S.W.3d 494, 496 (Tex. Civ. App.—Fort Worth 1950, no writ); *Arant v. Jaffe*, 436 S.W.2d 169, 176 (Tex. Civ. App.—Dallas 1968, no writ).

The M&B advertisements do not rise to the level as the speech dismissed by *Moore*, *Billington*, and *Arant* because the language used by M&B makes no express disparagements against Kool Smiles. Neither do the questions posed by M&B accuse Kool Smiles of criminal activity. For purposes of *per se* slander, Kool Smiles cannot rely on innuendo – as it did below (R.1446-47) – to bring the statements within the purview of slander *per se*. *Moore*, 166 S.W.3d at 386.

### ii.    No *Per Quod* Slander

"If the statement is not slanderous *per se*, the plaintiff must plead and prove special damages—*i.e.*, some form of pecuniary or economic loss—in order for the statement to be

actionable as slander *per quod.*" *Kelly v. Diocese of Corpus Christi*, 832 S.W.2d 88, 94 (Tex. App.—Corpus Christi 1992, writ dism'd w.o.j.). Unlike slander *per se*, "slander *per quod* requires the claimant to prove a statement's defamatory meaning through extrinsic circumstances." *In re Jennings*, 203 S.W.3d 32, 36 (Tex. App.—San Antonio 2006, no pet.). Under such an analysis, the plaintiff may rely upon innuendo through the use of extrinsic evidence to prove a statement's defamatory nature. *Moore*, 166 S.W.3d at 385.

Here, the speech is not defamatory because Kool Smiles failed to prove the falsity of the statements. *E.g., Brown*, 178 S.W.3d at 382; *McLemore*, 978 S.W.2d at 571; *Vice v. Kasprzak*, 318 S.W.3d 1, 18 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("That a statement is defamatory-that is, injurious to reputation-does not mean that it is false, and vice versa"). As noted above, M&B presented more than sufficient evidence establishing the truth of the speech. (R.269-71, 291-343, 352-1174, 1219-35, 1296-1325, 1346-82, 1401-03). Thus, Kool Smiles's argument that the allusion created by the

57

manner in which the speech was presented makes the advertisements defamatory is unavailing. *Durckel,* 78 S.W.3d at 585.

Moreover, the non-defamatory nature of the advertisements is supported by the fact that at the time any statements were being made by M&B, Kool Smiles had already been the subject of – and remains the subject of – serious investigations by several governmental authorities. In *Swate v. Schiffers*, 975 S.W.2d 70, 74-75 (Tex. App.—San Antonio 1998, pet. denied), the court decided that a doctor could not be defamed by additional, later publications or statements about his medical practice because his reputation had already been damaged by prior unfavorable media attention. Similarly, here, M&B's speech merely recounts the stories already publicized by parents, former employees, and government investigations. (R.292, 294, 298, 305, 1162, 1175).

### d.    No Actual Malice or Negligence

Kool Smiles also failed to meet its burden because it did not show "clear and specific evidence" that M&B acted negligently or with malice.

### (1)    Kool Smiles Is a Limited Public Figure

As a threshold matter, the actual malice standard applies because Kool Smiles is a limited public figure. *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *Vice*, 318 S.W.3d at 14-15. A private person/company becomes a "limited public figure" if "he voluntarily injects himself, or is drawn, into a particular controversy and becomes a public figure for a limited range of issues." *Swate*, 975 S.W.2d at 76.

Texas and this Court employ this test[27] for a "limited public figure":

- the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

---

[27]Kool Smiles admitted below that the *McLemore* test governs limited public figure classification. (R.1152-53).

- the plaintiff must have more than a trivial or tangential role in the controversy; and

- the alleged defamation must be germane to the plaintiff's participation in the controversy.

*McLemore*, 978 S.W.2d at 571 (citing *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433 (5th Cir. 1987).

In this case, all there elements are met. First, Medicaid fraud, Medicaid fraud by dental providers, and allegations of Kool Smiles's potential fraud and improper dental treatment was highly publicized before M&B's 2012 speech. (R.292-98, 305-10, 312, 314, 327, 341-45, 348, 1162, 1175). The resolution of the Medicaid fraud controversy is one that will likely impact all taxpayers and directly impact the children receiving dental treatment from Medicaid-focused dental clinics. (R.292-94, 327, 1162, 1175).

Second, Kool Smiles has had, and continues to have, "more than a trivial or tangential role in the controversy[.]" *McLemore*, 978 S.W.2d at 571. Kool Smiles thrust itself into the forefront of Medicaid fraud issues and issues concerning

the health and safety of children not only by accepting huge sums of Medicaid reimbursements, but by doing so by over-diagnosing cavities, misdiagnosing cavities, performing unnecessary and excessive dental services, wrongfully and excessively restraining children, and providing dental services falling below the minimum standards of care. Kool Smiles also held news conferences and made public comments regarding children's dental health. (R.292-94, 327, 352-1160, 1162, 1175). In *Swate*, the doctor at the center of the media stories, was considered a limited public figure because even though he "may not have voluntarily injected himself into controversy, he has certainly been drawn into controversy[.]" *Swate*, 975 S.W.2d at 76. The doctor was also considered a public figure because of the important public interest involved in the improper medical care allegations that underlie the public statements. *Id.*

Third, "the alleged defamation [by M&B is] germane to [Kool Smiles's] participation in the controversy," because Kool Smiles's claims against M&B related directly to – and only to –

the advertisements, website, and public comments made by M&B related to the dental services lawsuit. *See McLemore*, 978 S.W.2d at 571.

### (2)   No Actual Malice/Negligence

Because Kool Smiles is considered a limited public figure, it had the burden to prove "actual malice by clear and convincing evidence." *Vice*, 318 S.W.3d at 15 (citing *Sullivan*, 376 U.S. at 279-80). Kool Smiles failed to establish actual malice because the uncontroverted evidence shows M&B conducted a thorough investigation of Kool Smiles before making the statements, including:

- reviewing numerous news reports and parents complaints regarding Kool Smiles' practices;

- researching pediatric dental treatment and standards of care;

- consulting pediatric dentists about standards of care pertaining to the use of physical restraints, sedation, local anesthesia, cavities, radiographs, pulpotomies, stainless steel crowns, restorations, extractions, primary

teeth, permanent teeth, costs for dental services, and their experiences with children who received prior treatment from Kool Smiles;

- making inquiries to the Texas State Board of Dental Examiners, the Texas Attorney General's Office, the Texas Health and Human Resources Commission;

- researching through the internet and other means the Kool Smiles business, its owner, its dentists; and

- researching the law and consulting with intellectual property attorneys.

(R.1219-35).

Given the extensive research M&B conducted to ascertain not only the validity of the potential claims against Kool Smiles, but also the truth of any statements made in its advertising, website, and public comments, there was no actual malice by M&B to defame Kool Smiles.

Moreover, "[a]ctual malice means that the defendant made the statement knowing that it was false or with reckless disregard about whether the statement was false or not." *Vice,*

318 S.W.3d at 15 (citing *McLemore*, 978 S.W.2d at 571). The affidavits presented to the District Court established that M&B believed at the time, and still believe to this day, that the advertisements and statements to the public media are truthful and accurate. (R.275, 1219-35). In fact, the above facts and extensive due diligence by M&B also support Kool Smiles's failure to show any negligence on the part of M&B.

### e.     Kool Smiles Failed to Present Clear and Specific Evidence of Damages

If the statement is not slanderous *per se*, the plaintiff must plead and prove special damages. *Kelly*, 832 S.W.2d at 94. Special damages are distinguished from general damages; "general damages are those that naturally, proximately, and necessarily result from the slander." *Id.* (citing *Houston Belt & Terminal Ry. Co. v. Wherry*, 548 S.W.2d 743, 753 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.)). "Injuries to character or reputation, injuries to feelings, mental anguish and other like wrongs and injuries incapable of money valuation are general damages." *Kelly*, 832 S.W.2d at 94.

Kool Smiles did not meet the TCPA pleading requirement of "clear and specific evidence" because it provided nothing more than general averments that it incurred special damages. (R.1154-55) (affidavit by Geoff Freeman, Vice-President of Marketing for NCDR). Kool Smiles's vague evidence is wholly insufficient to carry its burden of proof.

### 2.    The Business Disparagement Claim

To prevail on a business disparagement[28] claim, a plaintiff must establish:

- the defendant published false and disparaging information about it;

- with malice;

- without privilege;

- that resulted in special damages to the plaintiff.

*Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003).

As demonstrated above in the analysis of Kool Smiles's

---

[28]A business disparagement claim differs from a defamation claim in that "defamation actions chiefly serve to protect the personal reputation of an injured party, while a business disparagement claim protects economic interests." *Id.* (citing *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 766 (Tex. 1987)).

65

defamation claim, Kool Smiles did not prove M&B's speech was false or disparaging, did not prove M&B acted with malice, and did not prove special damages. Also, as discussed above, M&B's speech was privileged.

### 3.    The Tradename/Service Mark Dilution Claim

Kool Smiles did not address this claim[29] in its opposition to M&B's motion to dismiss. (R.1459-63). For that reason alone, Kool Smiles failed to meet its TCPA burden because it provided no evidence to support the elements of this claim. Moreover, Kool Smiles presented no evidence that it owned any "mark" used by M&B. To the contrary, as Kool Smiles admitted in its Complaint, the Kool Smiles trademarks are owned by NCDR. (R.26, 280, 1205, 1394-400). Also, the trademark was registered by NCDR for the purpose of providing "general dentistry services;" yet, NCDR is not authorized in Texas to practice dentistry because it is not a licensed dentist or a

---

[29]This claim has six elements of proof: (1) the plaintiff is the owner of a mark which qualifies as a 'famous' mark; (2) the defendant is making commercial use; (3) in interstate commerce; (4) of a mark or trade name; (5) defendant's use began after the plaintiff's mark became famous; and (6) defendant's use causes dilution by lessening the capacity of plaintiff's mark to identify and distinguish goods or services." *Nike Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1372 (S.D. Ga. 2003).

professional corporation. *See* TEX. OCC. CODE ANN. § 256.001. Additionally, Kool Smiles did not establish any dilution because when M&B referred to the trademarks, the reference did not "lessen the capacity of plaintiff's mark to identify and distinguish goods or services."

### 4.    The Injury to Business Reputation Claim

Kool Smiles also failed to provide "clear and specific evidence" of its business reputation claim. "A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services." TEX. BUS. & COM. CODE. § 16.29. This claim is inextricably intertwined with Kool Smiles's defamation, business disparagement, and trade mark dilution claims. (R.34-35). Thus, for all of the reasons discussed above, Kool Smiles did not meet its burden of proof. Because of its

failure to do so, the District Court should have dismissed this case.

## CONCLUSION

M&B respectfully requests this Court to reverse the District Court's denial of M&B's Motion, render judgment dismissing Kool Smiles state law claims, and remand to the case to the District Court for a determination of fees and costs under section 27.009 of the Texas Civil Practice and Remedies Code.

Respectfully submitted,

KELLER STOLARCZYK PLLC
234 W. Bandera Rd., No. 120
Boerne, Texas 78006
Tele: 830.981.5000
Facs:888.293.8580

Kimberly S. Keller

*Attorney for Appellants*

## CERTIFICATE OF SERVICE

I certify that on January 14, 2013, I served on opposing counsel, listed below, Appellants' Brief and Record Excerpts via this Court's e-filing system:

> Darren L. McCarty
> Sean M. Whyte
> Courtney L. Sauer
> ALSTON & BIRD, LLP
> 2828 North Harwood Street, Suite 1800
> Dallas, Texas 75201

> John A. Kazen
> KAZEN, MEURER & PÉREZ, L.L.P.
> 211 Calle Del Norte, Suite 100
> Laredo, Texas 78041

Kimberly S. Keller

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies as follows:

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,649 words printed in a proportionally spaced typeface (Bookman Old Style).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it is printed in a proportionally spaced, serif typeface using Bookman Old Style 14 point font in text and Bookman Old Style 12 point font in footnotes.

3. This brief complies with the privacy redaction requirements of 5th Circuit Rule 25.2.13.

4. This brief complies with 5th Circuit Rule 25.2.1 because it is an exact copy of the electronic submission.

5. This brief is free of viruses because it has been scanned for viruses with the most recent version of a commercial virus scanning program.


Kimberly S. Keller

70

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

January 23, 2013

Ms. Kimberly S. Keller
Keller Stolarczyk P.L.L.C.
234 W. Bandera Road
Suite 120
Boerne, TX 78006-0000

       No. 12-41243,
       NCDR, L.L.C., et al v. Mauze & Bagby, P.L.L.C., et al
       USDC No. 5:12-CV-36

The following pertains to your brief electronically filed on
1/14/13.

We filed your brief.  However, it must be corrected within 14
days.

Title on the brief does not agree with the title of the case in
compliance with FED. R. APP. P. 32(a)(2)(C). (See attachment)

Once you have prepared your sufficient brief, you must email it
to: **Christina_Gardner@ca5.uscourts.gov** for review.  If the brief
is in compliance, you will receive a notice of docket activity
advising you that the sufficient brief has been filed.

You must also file an appearance form IAW FED. R. APP. P. 12(b)
and 5TH CIR. R. 12 & 46.3 within 14 days.  This form is available
from the Fifth Circuit web site, www.ca5.uscourts.gov.  If you
fail to electronically file the form, the brief and record
excerpts will be stricken and returned unfiled.

Opposing counsel's briefing time continues to run.

                    Sincerely,

                    LYLE W. CAYCE, Clerk

                    By: *Christina Gardner*
                    _____
                    Christina A. Gardner, Deputy Clerk
                    504-310-7684

cc:  Mr. Michael Arthur Correll
     Mr. Darren Lee McCarty

12-41243

NCDR, L.L.C.; DENTISTRY OF BROWNSVILLE, P.C., doing business as
Kool Smiles; KS2 TX, P.C.,

Plaintiffs - Appellees

v.

MAUZE & BAGBY, P.L.L.C.; GEORGE WATTS MAUZE, II; JAMES THOMAS
BAGBY, III,

Defendants - Appellants