No. 12-41243

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

NCDR, L.L.C.; DENTISTRY OF BROWNSVILLE, P.C.
doing business as Kool Smiles; KS2 TX, P.C.,
*Plaintiffs-Appellees*,

v.

MAUZÉ & BAGBY, PLLC; GEORGE WATTS MAUZÉ, II;
JAMES THOMAS BAGBY, III,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Texas

**BRIEF OF APPELLEES NCDR, L.L.C., DENTISTRY
OF BROWNSVILLE, P.C., and KS2 TX, P.C.**

ALSTON & BIRD LLP

Darren L. McCarty
Sean M. Whyte
Michael A. Correll
2828 North Harwood Street, Suite 1800
Dallas, TX 75201
Tel: (214) 922-3400
Fax: (214) 922-3899

ATTORNEYS FOR APPELLEES,
NCDR, L.L.C., ET AL.

## CERTIFICATE OF INTERESTED PERSONS

NCDR, L.L.C.; DENTISTRY OF BROWNSVILLE, P.C.
doing business as Kool Smiles; KS2 TX, P.C.,

*Plaintiffs-Appellees*,

v.                                          No. 12-41243

MAUZÉ & BAGBY, PLLC; GEORGE WATTS
MAUZÉ II; JAMES THOMAS BAGBY III,

*Defendants-Appellants*.


The undersigned counsel of record certifies that the following listed persons

have an interest in the outcome of this case.  These representations are made in

order that the judges of this Court may evaluate possible disqualification or

recusal.

**A.  Parties**

Plaintiffs-Appellees

1.   NCDR, L.L.C.

2.   Dentistry of Brownsville, P.C. d/b/a Kool Smiles.

3.   KS2 TX, P.C. d/b/a Kool Smiles.

Defendants-Appellants

1.   Mauzé & Bagby, P.L.L.C.

2.   George Watts Mauzé II.

3.   James Thomas Bagby III.

**B.  Other Interested Entities**

Kool Smiles Acquisition Corp. (NCDR's parent company).

**C.  Attorneys**

For Plaintiffs-Appellees:

Darren L. McCarty
Sean M. Whyte
Michael A. Correll
Jason Shyung
Alston & Bird LLP
2828 North Harwood Street,
Suite 1800
Dallas, Texas 75201
(214) 922-3400 – Telephone
(214) 922-3899 – Facsimile
darren.mccarty@alston.com
sean.whyte@alston.com
michael.correll@alston.com

John A. Kazen
Kazen, Meurer & Pérez, L.L.P.
211 Calle Del Norte, Suite 100
Laredo, Texas 78041
(956) 712-1600 – Telephone
(956) 712-1628 – Facsimile
jkazen@kmp-law.com

For Defendants-Appellants:

Kimberly S. Keller
Keller Stolarczyk PLLC
234 West Bandera Rd.
No. 120
Boerne, Texas 78006
(830) 981-5000 – Telephone
(888) 293-8580 – Facsimile
kim@kellsto.com

Michael S. Lee
The Lee Firm PC
615 N. Upper Broadway,
Suite 708
Corpus Christi, Texas 78401
(361) 882-4444 – Telephone
(361) 882-7844 – Facsimile

s/ *Darren L. McCarty*
Darren L. McCarty
2828 North Harwood Street, Suite 1800
Dallas, Texas 75201
(214) 922-3400 – Telephone

## STATEMENT REGARDING ORAL ARGUMENT

This case turns upon a straightforward application of well-established principles governing interlocutory jurisdiction, the interplay between state statutes and federal procedural rules, and the application of a clear statutory exemption that the district court applied in this case.  Given these issues and the briefing to date, Appellees NCDR, L.L.C.; Dentistry of Brownsville, P.C.; and KS2 TX, P.C. believe that oral argument is unnecessary in this case.

Further, requiring oral argument in this case will only further delay Appellees' opportunity to finally begin discovery in their nearly year-old case in the district court.

# TABLE OF CONTENTS

Certificate of Interested Persons ................................................................... ii

Statement Regarding Oral Argument .......................................................... v

Table of Contents ........................................................................................ vi

Table of Authorities ..................................................................................... ix

Introduction .................................................................................................. 1

Statement of Jurisdiction ............................................................................. 3

Statement of the Issues ................................................................................ 4

Statement of the Case .................................................................................. 5

Statement of Facts ....................................................................................... 7

    I.    Kool Smiles's Organization and Operations ............................. 7

        A.    Kool Smiles's Mission ................................................. 7

        B.    Kool Smiles's Dentists .............................................. 10

    II.    M&B's Defamatory Advertising Campaign ......................... 11

        A.    M&B's False and Misleading Advertising ............... 12

        B.    M&B's Purported Pre-Publication Investigation ...... 13

        C.    The Effects of M&B's Defamatory Advertising Campaign ................................................................. 15

        D.    Kool Smiles Seeks Redress ...................................... 16

Summary of the Argument .......................................................................... 17

Standard of Review ..................................................................................... 19

Argument ..................................................................................................... 19

    I.    The Texas Anti-SLAPP Statute's Expeditious and Limited Approach ........................................................................... 19

II.   The Court Does Not Have Jurisdiction Over This Interlocutory
      Appeal..............................................................................................21

      A.   The Framework of the Collateral Order Doctrine ....................22

      B.   Denials of TCPA Motions are Not Collateral Orders
           Because the TCPA Does Not Create A "Right Not To Be
           Tried" .......................................................................................24

III.  The TCPA Does Not Apply in Federal Court.....................................30

      A.   The TCPA Cannot Be Reconciled with Rule 12(d)..................30

      B.   Either the TCPA Directly Conflicts with Federal Rule of
           Appellate Procedure 4 or M&B's Notice of Appeal Was
           Untimely Filed .........................................................................34

      C.   These Dispositive Conflicts are Indicative of the
           Fundamental Incompatibility of the TCPA and Federal
           Procedure .................................................................................37

IV.   The District Court Correctly Concluded That M&B's
      Advertising Constituted Commercial Activity Exempt from the
      Coverage of the TCPA .......................................................................39

      A.   The Plain Language of the TCPA's Commercial Speech
           Exemption Precludes M&B from Applying the TCPA to
           this Case ...................................................................................39

      B.   The Plain Language of the Exemption Shows the Texas
           Legislature's Intent to Broadly Exclude Commercial
           Activity.....................................................................................41

      C.   M&B's Sole Cited Authority Affirmatively Supports the
           District Court's Interpretation of the TCPA in this Case .........44

V.    Kool Smiles's Pleadings and Affidavits Provide Clear and
      Specific Evidence in Excess of TCPA Requirements.........................46

      A.   The Court Need Not Address Kool Smiles's Prima Facie
           Showing in the First Instance on Appeal ..................................47

      B.   Kool Smiles's Defamation Claim .............................................49

1.      M&B's Assertive Questions Constituted Statements of Fact.............................................49

2.      M&B's Statements Were Defamatory Per Se under Texas Law....................................................50

3.      Kool Smiles Made a Prima Facie Showing of Falsity ............................................................51

4.      Although M&B are Strictly Liable for Their Defamatory Statements, Kool Smiles has Shown that M&B Acted with Malice .........................................51

5.      Kool Smiles Made a Prima Facie Showing of Damages ........................................................54

C.      Kool Smiles's Business Disparagement Claim .......................55

D.      The Absolute Litigation Privilege Is Irrelevant to this Motion.....................................................................56

Conclusion .............................................................................58

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*3M Co. v. Boulter,*
  842 F. Supp. 2d 85 (D.D.C. 2012) ....................................................31

*3M Co. v. Boulter,*
  2012 WL 5245458 (D.D.C. Oct. 24, 2012) .......................................51

*Arizona v. Evans,*
  514 U.S. 1 (1995)............................................................................28

*Askanase v. Fatjo,*
  130 F.3d 657 (5th Cir. 1997) ...........................................................56

*Avila v. Larrea,*
  2012 WL 6633994 (Tex. App.—Dallas Dec. 18, 2012) .............27, 42

*Bentley v. Bunton,*
  94 S.W.3d 561 (Tex. 2002)..............................................................54

*Bowles v. Russell,*
  551 U.S. 205 (2007).........................................................................35

*Brown v. Swett & Crawford of Tex., Inc.,*
  178 S.W.3d 373 (Tex. App.—Houston [1st Dist.] 2005)............49, 50

*Burlington N. R.R. Co. v. Woods,*
  480 U.S. 1 (1987).......................................................................30, 33

*Burns v. Harris County Bail Bond Bd.,*
  139 F.3d 513 (5th Cir. 1998) ...........................................................32

*Bus. Guides Inc. Chromatic v. Commc'ns Enters., Inc.,*
  498 U.S. 533 (1991).........................................................................30

*C&H Nationwide, Inc. v. Norwest Bank Tex. N.A.,*
  208 F.3d 490 (5th Cir. 2000) ...........................................................19

*Camacho v. Tex. Workforce Comm'n,*
  445 F.3d 407 (5th Cir. 2006) ...........................................................19

*Clark v. Jenkins*,
   248 S.W.3d 418 (Tex. App.—Amarillo 2008) .................................................56

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949)..................................................................................22, 23

*Consol. Cos., Inc. v. Union Pac. R.R. Co.*,
   499 F.3d 382 (5th Cir. 2007) ..............................................................................42

*Cranford v. Morgan Southern, Inc.*,
   421 F. App'x 354 (5th Cir. 2011) ................................................................36, 37

*Del-Ray Battery Co. v. Douglas Battery Co.*,
   635 F.3d 725 (5th Cir. 2011) ................................................................19, 21, 22

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
   511 U.S. 863 (1994)..................................................................................23, 24

*Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*,
   2013 WL 407029 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013)................27

*Englert v. MacDonell*,
   551 F.3d 1099 (9th Cir. 2009) ............................................................25, 28, 29

*Gaylord Broad. Co. v. Francis*,
   7 S.W.3d 279 (Tex. App.—Dallas 1999) .........................................................49

*Greene v. WCI Holdings Corp.*,
   136 F.3d 313 (2d Cir. 1998) ..............................................................................38

*Haack v. City of Carson City*,
   2012 WL 3638767 (D. Nev. Aug. 22, 2012)....................................................31

*Hanna v. Plumer*,
   380 U.S. 460 (1965)..................................................................................30, 38

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989)..........................................................................................54

*Henry v. Lake Charles Am. Press*,
   566 F.3d 164 (5th Cir. 2009) .....................................................................*passim*

*Herrera v. NBS, Inc.*,
   759 F. Supp. 2d 858 (W.D. Tex. 2010) ................................................................32

*Horton v. Bank One, N.A.*,
   387 F.3d 426 (5th Cir. 2004) ...........................................................................5, 47

*In re E.I. DuPont de Nemours & Co.*,
   136 S.W.3d 218 (Tex. 2004) .............................................................................46

*In re Stone*,
   986 F.2d 898 (5th Cir. 1993) .............................................................................37

*In re Tullius*,
   2012 WL 6101863 (5th Cir. Dec. 10, 2012) ......................................................23

*Isquith v. Middle S. Utils., Inc.*,
   847 F.2d 186 (5th Cir. 1988) .............................................................................32

*Jain v. Cambridge Petroleum Grp., Inc.*,
   2013 WL 458346 (Tex. App.—Dallas Feb. 7, 2013) .........................................34

*Jennings v. Wallbuilder Presentations, Inc.*,
   378 S.W.3d 519 (Tex. App.—Fort Worth 2012) .........................................26, 27

*Klentzman v. Brady*,
   312 S.W.3d 886 (Tex. App.—Houston [1st Dist.] 2009) ..............................52, 53

*Lipsky v. Range Prod. Co.*,
   2012 WL 3600014 (Tex. App.—Fort Worth Aug. 23, 2012) .............................26

*Midland Asphalt Corp. v. United States*,
   489 U.S. 794 (1989) .....................................................................................23, 28

*Moore v. Waldrop*,
   166 S.W.3d 380 (Tex. App.—Waco 2005) ........................................................49

*Pension Advisory Grp. v. Country Life Ins. Co.*,
   771 F. Supp. 2d 680 (S.D. Tex. 2011) ...............................................................56

*Peshak v. Greer*,
   13 S.W.3d 421 (Tex.App.—Corpus Christi 2000) .............................................53

*Red Bluff Drive-In, Inc. v. Vance*,
   648 F.2d 1020 (5th Cir. 1981) ..............................................................29

*Rhodes Colleges, Inc. v. Johnson*,
   2012 WL 627273 (N.D. Tex. Feb. 27, 2012) ...............................56, 57

*Rose v. Utah State Bar*,
   471 F. App'x 818 (10th Cir. 2012) ....................................................38

*Scanlan v. Tex. A & M Univ.*,
   343 F.3d 533 (5th Cir. 2003) ..............................................................40

*Simpson Strong-Tie Co. v. Gore*,
   230 P.3d 1117 (Cal. 2010) ...................................................44, 45, 46

*Snead v. Redland Aggregates Ltd.*,
   998 F.2d 1325 (5th Cir. 1993) ............................................................53

*Sprint/United Mgmt. Co. v. Mendelsohn*,
   552 U.S. 379 (2008)..............................................................................48

*Swate v. Schiffers*,
   975 S.W.2d 70 (Tex. App.—San Antonio 1998) ...............................50

*Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings Inc.*,
   219 S.W.3d 563 (Tex. App.—Austin 2007)..................................54, 55

*Tex. Keystone, Inc. v. Prime Natural Res., Inc.*,
   694 F.3d 548 (5th Cir. 2012) ..............................................................47

*Tex. Lottery Comm'n v. State Bank of DeQueen*,
   325 S.W.3d 628 (Tex. 2010) ...............................................................41

*Turner v. KTRK Television, Inc.*,
   38 S.W.3d 103 (Tex. 2000)...................................................................54

*United States Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.
   (In re United States Abatement Corp.)*,
   39 F.3d 556 (5th Cir. 1994) ................................................................37

*United States v. Colomb*,
   419 F.3d 292 (5th Cir. 2005) ..............................................................37

*United States v. Impson,*
    482 F.2d 197 (5th Cir. 1973) ...............................................................48

*Vouchides v. Houston Cmty. Coll. Sys.,*
    2011 WL 4592057 (S.D. Tex. Sept. 30, 2011)....................................40

*WFAA–TV, Inc. v. McLemore,*
    978 S.W.2d 568 (Tex. 1998) ...............................................49, 52, 53

*Will v. Hallock,*
    546 U.S. 345 (2006)......................................................................23, 24

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
    471 U.S.626 (1985).............................................................................42

**FEDERAL RULES**

Fed. R. App. P. 4.................................................................*passim*

Fed. R. Civ. P. 12 ..........................................................................30

Fed. R. Civ. P. 12(b) .....................................................................31

Fed. R. Civ. P. 12(b)(6).............................................................*passim*

Fed. R. Civ. P. 12(c).......................................................................31

Fed. R. Civ. P. 12(d) ...............................................................*passim*

Fed. R. Civ. P. 12(e)........................................................................6

Fed. R. Civ. P. 12(f).....................................................................5, 6

**STATUTES**

15 U.S.C. § 1115 ..............................................................................5

15 U.S.C. § 1125 ..............................................................................5

28 U.S.C. § 1291 ................................................................7, 22, 23

28 U.S.C. § 1292 ....................................................................7, 22

28 U.S.C. § 1331 ..............................................................................3

28 U.S.C. § 1367 ...................................................................................4

28 U.S.C. § 2072(b) ...........................................................................30

Cal. Civ. Code § 425.17(c) ...............................................................44

Cal. Civ. Code § 425.17(c)(1)......................................................44, 45

La. Code Civ. Proc. art. 971..............................................................26

Tex. Bus. & Com. Code § 16.29....................................................5, 47

Tex. Civ. Prac. & Rem. Code § 22.024 ............................................46

Tex. Civ. Prac. & Rem. Code § 27.001(7)(E) ..................................42

Tex. Civ. Prac. & Rem. Code § 27.002 .................................19, 20, 26, 28

Tex. Civ. Prac. & Rem. Code § 27.003 .............................................21

Tex. Civ. Prac. & Rem. Code § 27.003(b)........................................21

Tex. Civ. Prac. & Rem. Code § 27.003(c)........................................37

Tex. Civ. Prac. & Rem. Code § 27.004 .......................................21, 37

Tex. Civ. Prac. & Rem. Code § 27.005 .......................................21, 34

Tex. Civ. Prac. & Rem. Code § 27.005(a)........................................37

Tex. Civ. Prac. & Rem. Code § 27.005(b)....................................20, 33

Tex. Civ. Prac. & Rem. Code § 27.005(c)....................................*passim*

Tex. Civ. Prac. & Rem. Code § 27.006(a)........................20, 33, 47, 51

Tex. Civ. Prac. & Rem. Code § 27.008(a)...........................25, 26, 34, 35

Tex. Civ. Prac. & Rem. Code § 27.008(b)........................................21

Tex. Civ. Prac. & Rem. Code § 27.008(c)............................21, 34, 36

Tex. Civ. Prac. & Rem. Code § 27.010 .............................................20

Tex. Civ. Prac. & Rem. Code § 27.010(b)..............................20, 39, 44

OTHER AUTHORITIES

Amendments, H.B. 2973 82nd Leg., R.S. (TEX. 2011)............................................43

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    § 1366 (3D ED. 2012) .....................................................................................31, 32

Free Press Act 2012, S. 3493, 112th Cong. (2012) ...............................................28

House Bill 2973, 82nd Leg., R.S. (Tex. 2011) ......................................................43

Houes of Representatives Committee on the Judiciary and Civil
    Jurisprudence, Bill Analysis, H.B. 2973 82nd Leg. R.S. (Tex. 2011) .........19, 43

Senate, Bill Analysis, C.S.H.B. 2973 82nd Leg., R.S. (Tex. 2011) ..................19, 43

Tex. Displinary R. of Prof. Conduct 7.07 ..............................................................41

## INTRODUCTION

Much of the opening brief presented by Appellants Mauzé & Bagby, PLLC, George Watts Mauzé II, and James Thomas Bagby III (collectively, "M&B") was consumed by either loosely or wholly unsupported allegations about the practices of Appellees NCDR, L.L.C.; Dentistry of Brownsville, P.C.; and KS2 TX, P.C. (collectively, "Kool Smiles").[1]  Kool Smiles vigorously disputes M&B's specious accusations that Kool Smiles's dentists abuse children and defraud Medicaid, just as Kool Smiles did when M&B first began broadcasting them to solicit clients throughout Texas.  However, there is nothing unique about litigants strongly disagreeing, particularly in an action involving defamation.

What makes this case unusual is that, instead of being well on the way to resolution, discovery and all other progress in the case has been delayed for what ultimately may be over a year and a half by M&B's misuse of Texas's version of an anti-SLAPP statute,[2] the Texas Citizens Participation Act ("TCPA").  This delay not only prejudices Kool Smiles, but it contravenes the TCPA's own accelerated timelines—a critical aspect of the Texas Legislature's balanced

---

[1] The Kool Smiles dental offices referenced in this case are owned, maintained and operated by Dentistry of Brownsville, P.C. and KS2 TX, P.C.  NCDR, L.L.C. offers business and administrative services to entities, like those mentioned above, and does not own, maintain or operate any Kool Smiles dental offices.

[2] An anti-SLAPP statute is a state procedural device designed to combat so-called "strategic lawsuits against public participation" that seek to suppress valid exercises of First Amendment rights through the filing of frivolous lawsuits.  *Henry v. Lake Charles Am. Press*, 566 F.3d 164, 169 (5th Cir. 2009).

approach—both at the trial court and appellate court level.  The Texas Legislature created a procedure that serves the dual purposes of providing procedural safeguards for those engaged in certain constitutionally protected activities, while also protecting the rights of injured parties to bring meritorious lawsuits.

Among the TCPA's integral features are:

- A stay of general discovery pending resolution of the TCPA motion;

- Limited rights to present evidence to a trial court;

- A time-bounded decision process in the trial court;

- A required hearing;

- Limited appellate review rights; and

- A requirement that any appeal be expedited.

Yet these and other critical aspects of the TCPA directly conflict with the federal rules.  The approach asserted by M&B would require applying a conflicting hybrid of the federal rules and the TCPA, simultaneously depriving Kool Smiles, or any other litigant, of both federal protections and the carefully-balanced approach embodied in the TCPA.

The improper delay in this case is particularly disturbing because, as the district court recognized, M&B's commercial solicitations are facially exempt from any TCPA protections.

M&B also proffer 1058 pages of inadmissible evidence drawing on everything from Wikipedia to stories about completely unrelated dental practices—

material that was rightly disregarded by the district court. Essentially, M&B ask the federal courts to weigh their spurious submissions against Kool Smiles's prima facie showing on its state law claims—in contravention of Federal Rule of Civil Procedure 12(d) and even the TCPA's own schema.

Finally, this Court does not have jurisdiction over this interlocutory appeal. The TCPA's approach includes expedited and limited appellate review. If this Court exercised jurisdiction, it would violate the balance struck by the Texas Legislature and impermissibly alter statutorily granted rights. Faithfully adhering to Texas's statutorily-created approach, however, does not give rise to the sort of independent, immunity-style right that the collateral order doctrine recognizes to be separately appealable.

Even if this Court exercises jurisdiction, Kool Smiles should prevail for three independent reasons: (1) the TCPA does not apply in federal court because it directly conflicts with federal rules; (2) the district court correctly concluded that M&B's advertisements fall within the TCPA's commercial speech exemption; and, should the Court address it in the first instance, (3) Kool Smiles successfully made a prima facie showing on each of its state law claims.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Kool Smiles's federal claims under 28 U.S.C. § 1331. The district court had supplemental jurisdiction over Kool

Smiles's related state law claims under 28 U.S.C. § 1367.[3]

This Court lacks jurisdiction to consider this interlocutory appeal for the reasons set forth *infra*.

## STATEMENT OF THE ISSUES

This appeal presents four issues for review.  Should the Court find for Kool Smiles on any of the four issues, then it should either dismiss the appeal for lack of jurisdiction or affirm the district court.

ISSUE ONE:  Whether the collateral order doctrine provides jurisdiction over an interlocutory appeal from a district court's denial of a motion to dismiss under the TCPA.

ISSUE TWO:  Whether the TCPA applies in federal court notwithstanding its facial incompatibility with federal deadlines, including Federal Rule of Appellate Procedure 4, as well as the requirements of Federal Rule of Civil Procedure 12(d).

ISSUE THREE: Whether the district court correctly concluded that M&B's advertising of legal services to potential clients constituted commercial speech, making the TCPA expressly inapplicable to this case.

---

[3] In their briefing, M&B mistakenly claim that the district court had diversity jurisdiction over this case.  Appellants' Br. 21 (referring to the present matter as "this diversity case").  This case was never before the district court on diversity jurisdiction.

ISSUE FOUR: Whether the Court should undertake a first instance review to

determine if Kool Smiles met its purported statutory burden and, if

so, whether Kool Smiles's detailed affidavits and 172-paragraph

complaint demonstrate a prima facie case of defamation and business

disparagement.[4]

## STATEMENT OF THE CASE

On March 19, 2012, Kool Smiles filed its complaint in the United States

District Court for the Southern District of Texas alleging federal claims for

trademark infringement, false advertising, and cyberpiracy under 15 U.S.C. §§

1115 and 1125; state statutory claims for trademark dilution and injury to business

reputation under Texas Business and Commerce Code § 16.29; and state common-

law claims for defamation and business disparagement. USCA5 7-39. On April

13, 2012, M&B moved to dismiss the complaint under Federal Rule of Civil

Procedure 12(b)(6) and to strike the complaint under Rule 12(f) or for a more

---

[4] M&B claim in their briefing that the Court should also consider whether M&B were entitled to relief with respect to Kool Smiles's claims under Texas Business and Commerce Code § 16.29, which addresses trade name and service mark dilution. Appellants' Br. 66-67. M&B go so far as to assert that Kool Smiles failed to meet its TCPA burden in the district court because it "did not address" these claims. *Id.* However, M&B *never moved* on Kool Smiles's § 16.29 claims. *See generally* USCA5 251-88. In fact, Kool Smiles included an argument in its responsive briefing entitled "Defendants Fail to Address Kool Smiles's State Statutory Claims" in which it argued that M&B failed to move on either of Kool Smiles's § 16.29 claims, to which M&B never responded. USCA5 1436-37; s*ee generally* USCA5 1558-61. Accordingly, M&B cannot now claim on appeal that Kool Smiles failed to meet its burden. *See Horton v. Bank One, N.A.*, 387 F.3d 426, 435 (5th Cir. 2004) ("[A]rguments not raised in the district court cannot be asserted for the first time on appeal."). M&B do not appeal the district court's determination that the TCPA does not apply to federal claims. Appellants' Br. 25.

definite statement under Rule 12(e).  USCA5 197-204.  Kool Smiles responded to

M&B's motion on May 4, 2012.  USCA5 232-49.

Three weeks later, on May 25, 2012, M&B filed a successive motion to

dismiss, this time invoking the TCPA.  USCA5 251-88.  Kool Smiles responded to

the second motion on June 15, 2012.  USCA5 1410-96.  M&B replied on June 22,

2012.  USCA5 1558-61.

On October 5, 2012, 133 days after M&B filed their TCPA motion, the

district court denied all of M&B's motions.  USCA5 1575-80.  The court held that

the TCPA was inapplicable to Kool Smiles's federal claims and that M&B were

not entitled to relief with respect to Kool Smiles's defamation and business

disparagement claims because M&B's commercial advertisements are expressly

exempted from the TCPA.  USCA5 1577-78.  The district court then held that

M&B's arguments under Rules 12(b)(6), 12(f), and 12(e) were "without merit."

USCA5 1578-80.

On November 2, 2012, 161 days after filing their TCPA motion, M&B filed

their notice of appeal seeking interlocutory review of the district court's order

denying their motions to dismiss.  USCA5 1637-39.  On December 8, 2012, M&B

moved for rehearing and a stay of discovery pending appeal.  Defs.' Mot. Reh'g or

Stay Disc., Dec. 8, 2012, Docket No. 41 (S.R.E. Tab 1).  Four days later, the

district court entered a stay of all proceedings pending appeal. Order Granting

Mot. to Stay, Dec. 12, 2012, Docket No. 42 (S.R.E. Tab 2).

In the briefing notice, the Court instructed the parties to address whether the

district court's order was immediately appealable under the collateral order

doctrine or 28 U.S.C. §§ 1291 and 1292 (a) or (b). Briefing Notice, Dec. 3, 2012

(S.R.E. Tab 3). Additionally, the Court denied Kool Smiles's motion to expedite

consideration of this appeal. Dec. 17 Order Den. Mot. Expedite (S.R.E. Tab 4).

## STATEMENT OF FACTS[5]

### I.    Kool Smiles's Organization and Operations

#### A.    Kool Smiles's Mission

Unlike the dark depiction presented by M&B, *see* USCA5 11-13, dentist-

owned-and-operated offices branded as "Kool Smiles" have helped countless

underserved Texas children meet their dental needs.[6]  USCA5 10; 1499-1500;

1525-26.

M&B disregard the difficulties faced by many patients who Kool Smiles

treats as a part of its mission to provide care to the underserved. USCA5 1511.

---

[5] Kool Smiles believes that these contended facts, which are a significant focus of M&B's brief, are largely unnecessary to the resolution of this appeal. However, Kool Smiles provides these to present an accurate depiction of the circumstances.

[6] Kool Smiles is *not* a "national chain of dental clinics" as M&B have claimed. *See* Appellants' Br. 28. Rather, Kool Smiles offices are all owned and operated by independent dentist-owned companies that contract with NCDR, L.L.C. for support services and use of the Kool Smiles brand. USCA5 1499. Dentist-owned KS2 TX, P.C. and Dentistry of Brownsville, P.C. own the dental offices in Texas that were damaged by M&B's advertisements. USCA5 10.

Kool Smiles's patients often know little about the necessity of regular oral hygiene that promotes dental health. USCA5 1511; 1526-27. Some lack even basic oral hygiene tools such as toothpaste and toothbrushes. USCA5 1511; 1526-27. Kool Smiles often treats patients who are already in pain from severe dental issues. *See* USCA5 1511. For example, long-term cavities can result in pervasive damage that requires more extensive treatment. USCA5 1512. The average Kool Smiles patient is more likely to have advanced decay, gum disease, and a higher caries risk[7] than patients of a similar age from other populations. USCA5 1510-1512.

To treat patients with caries, a Kool Smiles dentist relies upon professional guidelines to recommend the best option for the patient—in some cases a filling or a crown if a restoration is deemed medically necessary. USCA5 1516. Each has its place in patient care. For any number reasons, fillings are not always the best option because of the many individual circumstances faced by Kool Smiles patients. USCA5 1517. Either because of these individual factors or because of more extensive decay, crowns may be the better choice. *Id*. If Medicaid or insurance will not cover a porcelain-faced crown when it is an available option, Kool Smiles accepts the reimbursement for a stainless steel crown and absorbs the higher cost of the porcelain-faced crown. *Id*.

---

[7] "Caries risk" is a term-of-art describing the likelihood that a patient will develop additional cavities as a consequence of the patient's dental history, level of dental education, dietary habits, oral hygiene practices, and means to seek regular dental care. USCA5 1512.

To ensure the patient's safety and allow for high quality care, Kool Smiles trains its dentists on, and requires them to strictly adhere to, the eight-category behavioral management approach developed by the American Association of Pediatric Dentists ("AAPD"). USCA5 1518, 1520. For instance, dentists learn the "tell-show-do" method that is designed to teach children what the dentist is going to do. USCA5 1518-19. Dentists also use AAPD-recommended techniques like voice-control, non-verbal communications (such as body language and facial expressions), positive reinforcement, distraction, parental involvement, and nitrous oxide to reduce patient anxiety. *Id.*

Only after addressing patient behavior through these techniques may Kool Smiles's dentists recommend protective stabilization—one of the AAPD approved techniques. USCA 1520. Dentists are required to obtain consent from a parent before using protective stabilization. USCA5 1519-20; 1528. As part of that consent process, parents learn about the stabilization process and are provided three options: (1) receive a referral to another dentist offering sedation under general anesthesia; (2) terminate or reschedule the treatment; or (3) authorize the use of protective stabilization. USCA5 1528.

Kool Smiles, on average, has achieved an extraordinary measure of patient satisfaction: 96.4% of surveyed patients report satisfaction with their experiences

at Kool Smiles, a fact that is irreconcilable with M&B's advertisements and other descriptions.  USCA5 1502.

Kool Smiles's importance to Texas's underserved community cannot be overstated.  Kool Smiles treated approximately 9% of all dental Medicaid patients in Texas in 2011.  USCA5 1500.  That same year, Kool Smiles also provided more than $14 million in free dental care.  USCA5 1500.

### B.     Kool Smiles's Dentists

The Kool Smiles-branded practices hire, train, and continually monitor their dental professionals to ensure the delivery of high-quality care.

Kool Smiles dentists must earn a dental degree from an accredited dental school, pass a licensure test administered by an applicable board of examination, obtain all applicable state dental licenses, and pass a background check.  USCA5 10; 1513.  Candidate dentists also are interviewed to assess their communication skills and affability and undergo a battery of clinical aptitude tests.  USCA5 1513.  Once hired, all Kool Smiles dentists are provided training on the AAPD's behavioral management techniques and guidelines, including the accepted use of protective stabilization, and must pass an exam covering the material.  USCA5 1513.  After passing behavioral management training, a new dentist spends most of her first week shadowing a senior Kool Smiles dentist to observe procedures and

best practices. USCA5 1514. Thereafter, a new dentist can begin treating patients under the observation of the senior dentist. *Id.*

Ensuring that high-quality care is provided to patients does not end there. Kool Smiles's dentists are regularly reviewed through extensive quality checks and audits by outside dentists and Kool Smiles's senior dentists. USCA5 10; 1515. If an audit reveals an issue that could compromise patient care, a senior Kool Smiles dentist will meet with the audited dentist to discuss the findings, develop a remediation plan, and provide additional training as necessary. USCA5 1515. If any audit reveals that a procedure was performed without medical necessity, Kool Smiles will issue a refund to Medicaid, the insurance company, or patient, as applicable. *Id.* Kool Smiles's dentists face stark consequences for adverse findings concerning the medical necessity of procedures and the quality of patient care, including possible termination of employment. *Id.*

## II.    **M&B's Defamatory Advertising Campaign**

Around February 4, 2012, M&B began drumming up litigation and soliciting clients through an extensive advertising campaign that included television and radio advertisements and a new website. USCA5 11, 14, 16; 1529. M&B's advertisements made a wide array of unfounded and untrue claims about Kool Smiles while using images closely resembling Kool Smiles's trademarked logo. USCA5 11, 13-16; 1500-01; 1529; 1535.

## A.    M&B's False and Misleading Advertising

To solicit clients, M&B's advertisements falsely asserted that Kool Smiles injured and disfigured children, subjected children to unnecessary treatment, and criminally defrauded the Medicaid program.  M&B's website and advertisements asked in English and Spanish whether children had been:

- "Strapped down to a papoose board" or "literally strapped down, crying and terrified";

- "Upset, crying, terrified, or traumatized";

- Fitted with "ugly, and possibly unnecessary, crowns," "a mouthful of stainless steel crowns," or "unwanted crowns";

- Given dental procedures that will require their child to "spend[] thousands of dollars for dental care for the rest of his/her life"; and

- "Exploited" as part of a Medicaid scheme designed to "increase [Kool Smiles's] revenue."

USCA5 11-12, 15-16; 1529; 1500.[8]  The message, couched in assertive "questions," was plainly intended.  These statements and images—showing an unidentified young child's open mouth with four of six visible teeth completely

---

[8] M&B argue on appeal that the weight of the evidence proves that their statements were "true."  Appellants' Br. 47-49.  But many—if not most—of M&B's cited documents do not stand for the propositions cited in the briefing.  *See, e.g.*, Appellants' Br. 36-37, 47-49 (citing numerous items that do not even reference Kool Smiles's Texas operations; instead citing to a *Medicare* investigation that did not even involve Kool Smiles, much less Kool Smiles's offices in Texas; pointing to investigations into unrelated dental companies, such as an orthodontic chain; presenting items addressing Kool Smiles-affiliated clinics outside of Texas without so noting; citing to unproven allegations from dismissed litigation; and offering printouts of other "authorities" like Wikipedia and WebMD).  Moreover, M&B's "evidence" is irrelevant as the TCPA only authorizes the Court to determine whether Kool Smile has made a prima facie showing.

capped in stainless steel—not only implied that these activities occurred regularly at Kool Smiles, USCA5 12, but were so outrageous that one television news report characterized the advertisements as "dark" and "allud[ing] to dental nightmares for children," USCA5 15.

The commercial nature of this conduct is apparent on its face. The transcripts of M&B's advertisements invite audience members to visit a commercial website or call a toll-free telephone number and self-identify as an "Advertisement brought to you by Tom Bagby." USCA5 133. M&B's website makes similar claims and provides reasons why potential clients should hire M&B. USCA5 151.

### B.     M&B's Purported Pre-Publication Investigation

M&B did not make any appreciable effort to investigate Kool Smiles's operations in Texas before launching their advertisements. In fact, M&B's voluminous "evidence" filed with their motion tells the tale M&B's inadequate investigation.

M&B began publishing their accusations of improper care and patient mistreatment before they had a single client making claims against Kool Smiles.[9]

---

[9] Though M&B claim on appeal that they were engaged by clients as early as February 2011, they offer no record citation for that claim. Appellants' Br. 12. Appellant Mauzé asserted in his district court affidavit that he was hired in February 2011 to investigate "a dental clinic chain in Texas," but he does not identify the chain. USCA5 1221.

Undeterred, M&B gathered stories from the internet about orthodontists, other dental clinics unrelated to Kool Smiles, Medicare investigations concerned with payments to unrelated entities engaged in providing geriatric treatment to the elderly, and stories about general investigations into Kool Smiles that have never produced an adverse finding addressing any of the issues raised in M&B's advertising.  *See* USCA5 308-323, 345-46 (addressing unrelated dental and orthodontic chains); 347-48 (addressing *Medicare* rather than *Medicaid*); 305-306 (noting that Kool Smiles patients sued the State of Georgia to *retain* access to Kool Smiles's clinics); 292-303 (addressing Kool Smiles-branded clinics in states other than Texas); 1405 (news story describing how Kool Smiles provides quality dental care to uninsured families in Texas).  To buttress this "investigation," M&B offered 700 pages of spreadsheets for the unremarkable proposition that Kool Smiles bills Medicaid when it treats Medicaid patients.  USCA5 352-1160.  Finally, M&B gathered what they deemed to be authoritative research from websites such as Wikipedia and WebMD.  USCA5 1327-1341.[10]

---

[10] Further examination of M&B's evidence reveals more problems with M&B's purported "investigation."  Of the 1058 pages of material M&B submitted, only four items addressing Kool Smiles's Texas operations predate M&B's advertisements—two sets of charts showing that Kool Smiles receives compensation from Medicaid for performing dental work, a news article entitled "Waco families with dental insurance get care," and a complaint from a lawsuit that was never adjudicated and that Kool Smiles vigorously disputed.  The balance of M&B's evidence fails to address Kool Smiles, fails to address Kool Smiles in Texas, or post-dates the dissemination of M&B's advertising.

Several items are absent from M&B's effort to support their defamatory statements.  M&B do not claim that they reviewed—or even had access to—a single patient chart before publishing their advertisements, nor do they claim that they had a single client submit to examination by an outside expert before that time.  USCA5 1219-35.  Similarly, M&B do not provide any affidavits that predate M&B's advertisements from any patient of Kool Smiles supporting M&B's assertions.  *See* USCA5 1296-325 (affidavits prepared by M&B for signature by their clients in defense of M&B's advertising dated May 2012).

M&B's inadequate investigation, if one was even undertaken at all, does not support their allegations against Kool Smiles.

## C.     The Effects of M&B's Defamatory Advertising Campaign

Kool Smiles sustained substantial injuries as a consequence of M&B's misleading and false campaign despite repeated efforts to stop M&B from continuing to publish their defamatory advertisements.[11]  USCA5 25-26.  Among other things, M&B's activities have:

- Hurt Kool Smiles's ability to attract and retain patients;
- Denigrated the reputation of Kool Smiles, its dentists, and staff;
- Caused employees to stop wearing the Kool Smiles logo in public for fear of reprisal;

---

[11] Before bringing suit, Kool Smiles sent a letter to M&B on February 9, 2012 requesting that M&B cease and desist any further false and disparaging advertising.  USCA5 18.  On February 16, 2012, Kool Smiles sent a second cease and desist letter.  USCA5 19.

- Created a sense of fear and humiliation for Kool Smiles's dentists and staff;

- Caused Kool Smiles's clinics to suffer decreased patient volumes;

- Led to employee layoffs in response to the decline in patient demand; and

- Required increased spending on rehabilitative advertising.

*Id.*; 1530-31; 1540-41; 1535-36; 1500-501, 1502-03.

In fact, Kool Smiles's employees have been harassed and harmed as a direct consequence of M&B's false and defamatory statements.  Kool Smiles's employees report that they have been accused by friends of working for a company that "hurts children."  USCA5 1535; 1541.  Individuals coming to Kool Smiles's clinics under the mistaken impression that they were supposed to return to the clinic to file a claim have accosted staff using vulgar language and epithets. USCA5 1540.  An employee's personal vehicle was vandalized in the Kool Smiles parking lot shortly after an angry parent came to the clinic in response to M&B's advertisements.  USCA5 1536.  More broadly, numerous Kool Smiles employees have faced a constant barrage of questions, accusatory treatment, and general public distrust as a result of the advertisements.  USCA5 1531; 1541; 1535-36.

**D.    Kool Smiles Seeks Redress**

Kool Smiles demanded the advertising cease, but was eventually forced to file this lawsuit.  After successive motions to dismiss, including the TCPA-based motion, USCA5 197-204, 251-88, this improper interlocutory appeal, USCA5

1637-39, and a stay of the action pending resolution of this appeal, S.R.E. Tab 2, it may well be over a year and a half before any progress towards the redress of Kool Smiles's claims even begins.

## SUMMARY OF THE ARGUMENT

M&B's improper interlocutory appeal fails for four independent reasons.

First, though ordered by the Court to provide briefing to support this Court's jurisdiction, M&B do not fulfill their burden to establish jurisdiction. Instead, M&B string-cite three inapposite decisions addressing other states' anti-SLAPP statutes without any analysis. A closer review of the jurisdictional question reveals that, consistent with prior Fifth Circuit decisions, interlocutory denials of motions under the TCPA do not constitute collateral orders giving rise to immediate appellate review.

Second, even if the Court has jurisdiction, it should conclude that the TCPA does not apply in federal court because it directly conflicts with federal deadlines, Federal Rule of Civil Procedure 12(d), and Federal Rule of Appellate Procedure 4. With respect to timing, the TCPA requires an accelerated pace to protect the rights of litigants—particularly those suing to protect their rights—which conflict with federal rules. With respect to Rule 4, the TCPA purports to deprive district courts of control over the entry of judgment and impose state deadlines on federal appellate courts.

The TCPA also impermissibly strips district courts of their Rule 12(d) authority to ignore proffers of extrinsic evidence when considering motions to dismiss. At the same time, the TCPA would force district courts to violate their Rule 12(d) obligation to treat such motions as motions for summary judgment upon the consideration of extrinsic evidence. These conflicts with the federal rules make the TCPA incompatible with federal practice and, thus, inapplicable in federal court.

Third, the district court correctly concluded that M&B's advertisements, aimed at potential clients, constituted commercial activity falling within the TCPA's commercial activity exemption. Contrary to M&B's arguments on appeal, neither the plain language nor the legislative history of the TCPA suggests that the Texas Legislature meant to create a special "lawyers only" exception to the commercial activity exemption. M&B's only purported authority in support of their position actually confirms that the Texas Legislature affirmatively chose not to create such an exception.

Finally, should M&B's appeal survive these formidable obstacles, the Court should remand this case to the district court rather than address in the first instance whether Kool Smiles has made a prima facie showing. However, should the Court decline to do so, Kool Smiles's affidavits and pleadings readily establish a prima facie case by clear and specific evidence.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725, 730 (5th Cir. 2011) *cert. denied*, 132 S. Ct. 559 (U.S. 2011). Federal courts examining the scope of their own authority should "presume[] that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

The Court reviews *de novo* questions relating to a district court's determinations regarding the applicability of a state statute in federal court. *Camacho v. Tex. Workforce Comm'n*, 445 F.3d 407, 409 (5th Cir. 2006). Similarly, the Court reviews *de novo* the district court's construction of a state statute once it has determined that the statute applies in federal court. *C&H Nationwide, Inc. v. Norwest Bank Tex. N.A.*, 208 F.3d 490, 493 (5th Cir. 2000).

## ARGUMENT

## I.     The Texas Anti-SLAPP Statute's Expeditious and Limited Approach

The TCPA was enacted on June 17, 2011, to provide Texas courts with the ability to dismiss *frivolous* lawsuits "aimed at silencing" individuals exercising certain constitutional rights *and* to protect the right of injured plaintiffs to bring suit. *See* TEX. CIV. PRAC. & REM. CODE § 27.002; H.R. Comm. on the Judiciary and Civil Jurisprudence, Bill Analysis, H.B. 2973 82nd Leg. R.S., at 1 (Tex. 2011) [hereinafter House Committee Report]; S., Bill Analysis, C.S.H.B. 2973 82nd

19

Leg., R.S., at 1 (Tex. 2011) [hereinafter Senate Report]. The new statute was a significant change to the landscape of Texas civil procedure, which previously lacked a device akin to a motion to dismiss. The scope of the TCPA's motion to dismiss is narrow. It provides an additional procedural safeguard only when an individual's right to speak, associate, petition, or otherwise participate in government is at issue, while expressly excluding commercial speech and related activities. TEX. CIV. PRAC. & REM. CODE §§ 27.002, 27.010(b).

Procedurally, the movant, here M&B, must show by a preponderance of the evidence that the claims brought against it are "based on, relate[] to, or [are] in response to" its exercise of a protected right. *Id.* § 27.005(b). The respondent, here Kool Smiles, does not rebut that showing, but instead is directed to respond by making a prima facie showing on its own claims through affidavits and pleadings. *See id.* § 27.005(c). A party may argue the sufficiency of another party's showing or show that the action falls within a statutory exemption, but the statute does not permit the court to weigh competing evidence. *See id.* §§ 27.006(a), 27.010, 27.005(b)-(c). If the non-movant meets the minimal threshold by demonstrating a prima facie case or if the non-movant proves an exemption applies, then the motion to dismiss fails. *Id.* § 27.005(c).

This limited review is paired with an expedited timeline and a stay of general discovery during the pendency of the motion in the trial court. *See*

20

*generally id.* §§ 27.003—27.005. The TCPA provides a movant 60 days to file a motion after the date of service. *Id.* § 27.003(b). Trial courts are instructed to hear the motion within 30 days after the motion is served, *id.* § 27.004, and obligated to rule within 30 days of the hearing. *Id.* § 27.005. If the trial court does not rule before the statutory deadline, a movant may invoke the TCPA's only grant of appellate review by filing an appeal within 60 days of the missed deadline. *Id.* § 27.008(c). The TCPA mandates that appellate courts expedite such an appeal. *Id.* § 27.008(b).

The TCPA thus provides for an initial, limited evidentiary review, but falls short of granting a full weighing of the evidence. Expediency is integral to the TCPA's design, which ensures that defendants may quickly dispose of meritless retaliatory lawsuits, but that plaintiffs bringing proper prima facie cases do not suffer endless delays before obtaining discovery and a chance to remedy their injuries.

## II.  The Court Does Not Have Jurisdiction Over This Interlocutory Appeal

The Court has ordered the parties to brief whether the Court has interlocutory jurisdiction over this appeal. Dec. 3, 2012 Br. Notice at 2. M&B have addressed the issue of jurisdiction only in their "Statement of Jurisdiction." Appellants' Br. xvi-xvii. Despite their affirmative obligation to prove that the Court has jurisdiction, *Del-Ray Battery*, 635 F.3d at 730, M&B limit their

jurisdictional arguments to mistakenly claiming that the TCPA directly provides for jurisdiction in this case and string-citing three cases without analysis. Appellants' Br. xvi-xvii. The Court should begin with the presumption that this appeal "lies outside [its] limited jurisdiction" and dismiss this appeal because M&B have failed to carry their burden of affirmatively proving that jurisdiction exists. *Del-Ray Battery*, 635 F.3d at 730.

But even if the Court were to excuse M&B's failure to brief the jurisdictional issue, the Court nonetheless lacks jurisdiction over this appeal.

## A.     The Framework of the Collateral Order Doctrine

M&B assert that this Court has jurisdiction pursuant to 28 U.S.C. § 1291 by operation of the collateral order doctrine. M&B do not contend that this Court has interlocutory jurisdiction over this appeal under 28 U.S.C. § 1292 or any other statute.

Section 1291 empowers a federal appellate court to hear appeals from all "final decisions of the district courts." 28 U.S.C. § 1291 (2012). Within this congressionally-imposed constraint, the judicially-developed collateral order doctrine serves to identify the "small class [of orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). These orders must be "too important to be denied review and too independent of the cause itself

to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* Because a qualifying order finally determines a claim of right, an exercise of jurisdiction under the collateral order doctrine qualifies as an exercise of jurisdiction under 28 U.S.C. § 1291. *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994); *see also Henry*, 566 F.3d at 171. "The collateral order doctrine applies only when three conditions are met: The order at issue must (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) be effectively unreviewable on appeal from a final judgment." *In re Tullius*, No. 11-51167, 2012 WL 6101863, at *3 (5th Cir. Dec. 10, 2012) (citing *Will v. Hallock*, 546 U.S. 345, 349 (2006)). Though an order must satisfy all three requirements, whether a district court's order will be effectively unreviewable on appeal from a final judgment represents the "fundamental characteristic of the collateral order doctrine." *Henry*, 566 F.3d at 177.

In the context of defenses to suit, the collateral order doctrine applies only where a party is granted the "right not to be tried." *Id.* This Court and the Supreme Court have both cautioned that "[o]ne must be careful . . . not to play word games with the concept of a 'right not to be tried' for virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a 'right not to stand trial.'" *Id.* at 178 (quoting *Midland*

*Asphalt Corp. v. United States*, 489 U.S. 794, 801 (1989) and *Digital Equip. Corp.*, 511 U.S. at 873) (internal citations omitted). Section "1291 requires courts of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Digital Equip. Corp.*, 511 U.S. at 873. Thus, the loss of a right to the "mere avoidance of a trial"—like that conferred by most motions to dismiss— is inadequate to create interlocutory jurisdiction under the collateral order doctrine. *Will*, 546 U.S. at 353.

### B.    Denials of TCPA Motions are Not Collateral Orders Because the TCPA Does Not Create A "Right Not To Be Tried"

This Court's decision in *Henry*, relied upon by M&B without analysis, addressed Louisiana's version of an anti-SLAPP statute. Although *Henry* held that the Louisiana anti-SLAPP statute allowed for interlocutory appeals under the collateral doctrine, it did not determine that all state statutes labeled as "anti-SLAPP" statutes automatically qualify for interlocutory review. Instead, this Court engaged in a close analysis of the Louisiana statute, noting that the question centered on whether *the specific statute at issue* creates a "right not to be tried" and distinguishing a key aspect of Louisiana courts' treatment of the Louisiana statute from at least one other state's judicial treatment of its own anti-SLAPP statute. *See Henry*, 566 F.3d at 178 & n.* (examining the mechanisms included in the Louisiana statute and distinguishing the Louisiana statute from Oregon's anti-SLAPP statute).

24

In *Henry*, the Fifth Circuit sought to harmonize its view that the Louisiana anti-SLAPP statute provided for immediate appellate review with the Ninth Circuit's earlier holding that the denial of an Oregon anti-SLAPP motion to strike was not an appealable collateral order. *Id.* (citing *Englert v. MacDonell*, 551 F.3d 1099, 1104-06 (9th Cir. 2009)). Looking at the Louisiana anti-SLAPP statute, the Court acknowledged the Louisiana statute's silence on the issue of interlocutory appeals, mirroring the Oregon anti-SLAPP statute, but found it significant that Louisiana state courts had made interlocutory appeals generally available, unlike Oregon courts. *Id.*

Here, however, the TCPA *does* address—and limits—the availability of interlocutory review. TEX. CIV. PRAC. & REM. CODE § 27.008(a).[12] Owing to the prominence of expedient review under the TCPA, the statute limits interlocutory appellate review of an unsuccessful TCPA motion to those circumstances in which a trial court either fails to, or refuses to, address a defendant's timely filed motion. Section 27.008 states in relevant part:

> If a court does not rule on a motion to dismiss under
> Section 27.003 in the time prescribed by Section 27.005,

---

[12] A federal court's jurisdiction is not controlled by a state statute. *Englert*, 551 F.3d at 1107. Nonetheless, as the Ninth Circuit has explained, the legislative intent expressed in the text of an anti-SLAPP statute provides highly instructive authority where a court is asked to determine whether a statute creates a "right not to be tried." *Id.*; *see also Henry,* 566 F.3d at 178 n.* (explaining that the Court should look to the text of the statute and treatment by state appellate courts to determine whether a statute creates a "right not to be tried").

> the motion is considered to have been denied by
> operation of law and the moving party may appeal.

*Id*. § 27.008(a).

The TCPA thus adopted a carefully-crafted statutory scheme. A party asserting rights under the TCPA has a single bite at the apple. Either the trial court must rule on the TCPA motion or the movant may seek a ruling in the first instance from an appellate court. *Id.* This approach ensures an expedient resolution and balances the TCPA's express purpose of "encourag[ing] and safeguard[ing] the constitutional rights of persons" while "protect[ing] the rights of a person to file meritorious lawsuits."[13] *Id.* § 27.002.

Texas appellate courts have confirmed this plain reading. In *Jennings v. Wallbuilder Presentations, Inc.*, 378 S.W.3d 519, 528-29 (Tex. App.—Fort Worth 2012, pet. filed), the court ruled that it could not consider an interlocutory appeal from the trial court's timely substantive denial of a TCPA motion to dismiss. *See also Lipsky v. Range Prod. Co.*, No. 02-12-00098-CV, 2012 WL 3600014, at *1 (Tex. App.—Fort Worth Aug. 23, 2012, pet. filed) (mem. op.) (holding that, per *Jennings*, the court lacked interlocutory jurisdiction over a trial court's reasoned denial). In line with this reasoning, another Texas appellate court asserted jurisdiction over an interlocutory appeal of a TCPA-based motion because "the

---

[13] No such legislatively adopted purpose is expressed in the Louisiana anti-SLAPP statute. *See generally* LA. CODE CIV. PROC. art. 971.

trial court did not 'rule on' appellants' motion to dismiss" under the TCPA.  *Avila v. Larrea*, No. 05-11-01637-CV, 2012 WL 6633994, at *7 (Tex. App.—Dallas Dec. 18, 2012, no pet. h.) (mem. op.); *but see Direct Commercial Funding, Inc. v. Beacon Hill Estates, LLC*, No. 14-12-00896-CV, 2013 WL 407029, at *1, 4 (Tex. App.—Houston [14th Dist.] Jan. 24, 2013, no pet. h.) (holding that the timely *granting* of a TCPA motion is subject to interlocutory review even when counterclaims remain).[14]

This limited right of an early, single reasoned decision does not rise to the level of immunity—"[p]erhaps the embodiment of unreviewability." *Henry*, 566 F.3d at 177.  A cornerstone of various forms of immunity, such as Eleventh Amendment immunity and § 1983 qualified immunity, is that the party asserting immunity has the right to have the issue vetted through appeal via the collateral order doctrine.  *See id.*  The collateral order doctrine is the vehicle by which federal courts have safeguarded certain constitutional and long-understood common-law rights distinguishable from the Texas procedural devices at issue in

---

[14] The distinction between the partial grant of a TCPA motion and the denial of TCPA motion by operation of law arguably renders *Direct Commercial* inapplicable to this case.  When a TCPA motion is denied by operation of law, the defendant is denied its first instance opportunity to seek dismissal.  However, where a TCPA motion is denied by timely reasoned opinion or partially granted in favor of a defendant, the purposes of the statute have been realized.  Accordingly, as the *Jennings* court held, the former scenario enjoys the benefit of *de novo* appellate review while the latter is relegated to the more rigorous standards imposed by Texas writ practice.  *Jennings*, 378 S.W.3d at 524.

this case. *Midland Asphalt Corp.*, 489 U.S. at 801-02 (distinguishing between longstanding rights to avoid trial and generic assertions of rights).

However, the federal courts have never adopted the collateral order doctrine as a routine means of protecting free speech, petition, or similar rights that might be impinged by a legal action—such as routinely granting collateral order status to the denial of a Rule 12(b)(6) motion to dismiss that raises First Amendment concerns. Equally important, Congress has never provided any such right either, though there have been calls for a federal version of an anti-SLAPP statute. *See, e.g.*, Free Press Act 2012, S. 3493, 112th Cong. (2012). In other words, there is no source of federal authority to extend immunity-style protections to claimed infringements of even First Amendment protections.

Instead, at issue here is whether Texas's legislatively enacted safeguard, adopted to provide additional limited procedural protections for certain rights amounts to immunity-style protection. TEX. CIV. PRAC. & REM. CODE § 27.002. States unquestionably have the right to enact such additional protections over constitutional rights for use in their own courts. *See Arizona v. Evans*, 514 U.S. 1, 8 (1995) (stating that "state courts are absolutely free to interpret state constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution"). However, federal courts are not free to expand or alter the scope of such state legislation. *See Englert*, 551

F.3d at 1105-106 (refusing to expand Oregon's anti-SLAPP statute to permit immediate appellate review).

The Texas Legislature struck its own balance between the rights of litigants to seek an expeditious review of the merits of a lawsuit potentially impacting certain rights and the countervailing right to pursue meritorious claims in a timely manner. *See Englert*, 551 F.3d at 1105-06 (respecting the balance struck by the Oregon legislature by refusing to allow for an immediate appeal). As this Court has stated:

> The product of the State's legislative processes may not be the statute we would choose as the best accommodation between the State's legitimate regulatory purposes and the federal constitutional rights of its citizens. Yet, as a federal court, we possess no mandate to engage in detailed editing of the Legislature's effort to strike the precarious balance necessary in this sensitive area.

*Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020, 1035 (5th Cir. 1981). The TCPA's grant of accelerated and limited appellate rights show that its intent was not to exalt its protections to the level of immunity, but simply to provide an early review by one court of the potential merits of lawsuits that implicate certain constitutional rights. If this Court applies the collateral order doctrine to the TCPA, in contravention of the statute's own limited and expedited appellate scheme, it will upset the balance created by the Texas Legislature and create a modified anti-SLAPP protection in federal courts.

### III.    The TCPA Does Not Apply in Federal Court[15]

If the TCPA is applied according to its express language, as it must be, then it directly conflicts with the properly enacted federal rules governing deadlines, including appellate review, and the treatment of motions to dismiss. This direct collision between the federal rules and the TCPA requires the Court to disregard conflicting Texas law. *See Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987) (citing *Hanna v. Plumer*, 380 U.S. 460, 471-472 (1965) (holding that a state statute that conflicts with a federal rule will not apply in federal court so long as the federal rule at issue was properly enacted).[16]

### A.    The TCPA Cannot Be Reconciled with Rule 12(d)

Applying the TCPA to state claims in federal courts would abrogate Federal Rule of Civil Procedure 12(d). By its terms, the TCPA strips the district courts' of

---

[15] M&B incorrectly claim that the district court "rejected" Kool Smiles's argument that the TCPA does not apply in federal court. Appellants' Br. 24 n.14. Instead, the district court pretermitted that question, USCA5 1575-80, finding two issues related to M&B's TCPA motion dispositive. The district court held that the TCPA could not apply to federal question claims and that the commercial activity exemption applied to prevent M&B from relying on the TCPA. USCA5 1577-78.

[16] *Hanna* analysis also involves a review of whether the federal rule found to be in conflict with the state law comports with the Rules Enabling Act. Rules promulgated by the Supreme Court, like those at issue here, will be deemed to comply with the act so long as they do not purport to abridge, enlarge, or modify substantive rights. *See* 28 U.S.C. § 2072(b) (2012). Moreover, to find that a given rule conflicts with the Rules Enabling Act, the Court would have to find that "the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Bus. Guides Inc. Chromatic v. Commc'ns Enters., Inc.*, 498 U.S. 533, 552 (1991). Here, M&B cannot credibly argue that Federal Rule of Civil Procedure 12 and Federal Rule of Appellate Procedure 4—two of the most commonly invoked and well-established federal rules—violate the Rules Enabling Act.

their mandated discretion to determine whether to exclude matters outside the

pleadings and also prevents district courts from complying with their obligation to

convert evidence-supported motions to dismiss to motions for summary judgment.

Federal Rule of Civil Procedure 12(d), entitled "Result of Presenting Matters

Outside the Pleadings," states:

> If, on a motion under Rule 12(b)(6) or 12(c),[17] matters
> outside the pleadings are presented to and not excluded
> by the court, the motion must be treated as one for
> summary judgment under Rule 56. All parties must be
> given a reasonable opportunity to present all the material
> that is pertinent to the motion.

FED. R. CIV. P. 12(d).

In practice, Rule 12(d) creates a two-step process if any party proffers

material outside the pleadings. The district court must first decide whether to

---

[17] Federal courts do not limit the application of Rule 12(d) to motions brought under Rule 12(b)(6) or Rule 12(c). Instead, as Wright & Miller explain:

> Although the conversion provision in Rule 12(b) expressly applies
> only to the defense described in Rule 12(b)(6), it is not necessary
> that the moving party actually label the motion as one under that
> provision in order for it to be converted into a motion for summary
> judgment. *The element that triggers the conversion is a challenge
> to the sufficiency of the pleader's claim supported by extra-
> pleading material. As many cases recognize, it is not relevant how
> the defense actually is denominated in the motion.*

5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2012) (emphasis added) (hereinafter WRIGHT & MILLER). In keeping with this observation, courts have already held that Rule 12(d) applies to anti-SLAPP motions to dismiss seeking to introduce extrinsic evidence. *See Haack v. City of Carson City,* No. 3:11-cv-00353-RAM, 2012 WL 3638767, at *5-6 (D. Nev. Aug. 22, 2012); *3M Co. v. Boulter,* 842 F. Supp. 2d 85, 102 (D.D.C. 2012) (holding that Rule 12(d) applies to anti-SLAPP motions to dismiss, thereby creating an impermissible direct collision with the D.C. anti-SLAPP statute).

consider or exclude the extrinsic evidence. *See id.* The district court has complete and unreviewable discretion to exclude extrinsic materials. *See Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 194 n.3, 196 (5th Cir. 1988) (holding that Rule 12(d) gives a district court "complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion").

The second step turns on the district court's exclusion determination. If the district court excludes the material, then the motion to dismiss proceeds under the familiar federal dismissal standard. *See, e.g.*, *Herrera v. NBS, Inc.*, 759 F. Supp. 2d 858, 863 (W.D. Tex. 2010) (applying the ordinary dismissal standard after declining to convert motion under Rule 12(d)). If the court instead decides to consider extrinsic material, it *must* convert the motion to dismiss to a motion for summary judgment. *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998). The purpose of Rule 12(d) is clear: a district court should have the discretion to efficiently and effectively make decisions while providing safeguards to ensure all litigants are given fair opportunity to fully present their evidence. *See* WRIGHT & MILLER at § 1366.

The TCPA cannot be reconciled with either of Rule 12(d)'s steps. First, applying the TCPA in federal court would strip district courts of their Rule 12(d) discretion by *requiring* them to consider matters outside the pleadings at the

motion to dismiss stage.  The TCPA states that a trial court "*shall* consider" the pleadings and affidavits that both support and oppose the motion.  TEX. CIV. PRAC. & REM. CODE § 27.006(a) (emphasis added).  This mandate is wholly inconsistent with the grant of complete discretion afforded to district courts by Rule 12(d).  *See Burlington N. R.R. Co.*, 480 U.S. at 4-5.

Second, the TCPA compels a district court to violate Rule 12(d)'s conversion requirement once the court opts to (or, if the TCPA applies, is forced to) consider matters outside the pleadings.  Rule 12(d) unambiguously states that, once matters outside the pleadings are considered, "the motion *must* be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d) (emphasis added).  But the TCPA requires the district court to determine whether the parties have proffered enough extrinsic evidence to meet their TCPA-specific burdens—a significant departure from examining all available admissible evidence for "more than a scintilla" of record support creating genuine issues of material fact.  *Compare* TEX. CIV. PRAC. & REM. CODE § 27.005(b)-(c) *with* FED. R. CIV. P. 12(d), 56.  This forced evaluation of extrinsic material, paired with the specific decisional standards articulated in the statute, directly conflicts with a district court's obligation to convert a motion to dismiss to a motion for summary judgment upon considering matters outside the pleadings.  *Burlington N. R.R.*, 480 U.S. at 4-5.

**B.** **Either the TCPA Directly Conflicts with Federal Rule of Appellate Procedure 4 or M&B's Notice of Appeal Was Untimely Filed**

Unlike the Louisiana and Oregon anti-SLAPP statutes discussed in *Henry*, 566 F.3d at 178 & n.\*, the TCPA mandates certain appellate procedures that directly collide with Federal Rule of Appellate Procedure 4, *see* TEX. CIV. PRAC. & REM. CODE § 27.008(c). Under the TCPA, a trial court must rule on a TCPA motion to dismiss no more than 30 days after conducting the statute's mandatory hearing, generally no more than 60 days after a motion is filed. TEX. CIV. PRAC. & REM. CODE § 27.005. If a trial court fails to rule in that time period, the motion is automatically denied by operation of law without any action by the court. *Id.* § 27.008(a).[18] Once that automatic denial is triggered or the trial court complies with the statutory mandate, the movant has a 60-day window to file "an appeal or other writ." *Id.* § 27.008(c).

Rule 4, however, unequivocally requires a civil litigant to file a notice of appeal with the district clerk no more than 30 days after the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The Supreme Court has held that Rule 4's timeliness

---

[18] These deadlines are strict. A Texas appellate court recently held a movant's failure to seek interlocutory review within 60 days of the trial court's statutory deadline to rule prohibited interlocutory review, even where the trial court later issued an untimely signed ruling and the appellant sought review merely five days after that ruling was entered. *Jain v. Cambridge Petroleum Grp., Inc.*, No. 05-12-00677-CV, 2013 WL 458346, at \*1-2 (Tex. App.—Dallas Feb. 7, 2013, no pet. h.). Notably, the fact pattern present in *Jain* is indistinguishable from this case. M&B would have been barred from appellate review by the TCPA's statutory deadlines.

mandate creates a bright line rule for all appeals and that filing a notice of appeal in compliance with Rule 4 is a jurisdictional requirement. *Bowles v. Russell*, 551 U.S. 205, 213 (2007). Thus, while failure to strictly comply with Rule 4 automatically bars appellate review under binding Supreme Court precedent, the TCPA, if applied in federal court, would improperly alter Rule 4's timeliness requirement—and thereby alter federal appellate jurisdiction—by operation of state legislation.

In fact, this case presents a clear example of the predicament created by the conflict between the TCPA and Rule 4. Put simply, if the TCPA applies in federal court, then M&B's notice of appeal was untimely. Under the statute, M&B's motion was automatically denied no later than July 25, 2012—30 days after a hearing was required under the statute and 60 days after their motion was filed. *See* TEX. CIV. PRAC. & REM. CODE § 27.008(a). If the motion was denied by operation of law on July 25, 2012, then M&B's notice of appeal was due on August 24, 2012, under Rule 4 and no later than September 23, 2012, under the TCPA. But, M&B did not file their notice of appeal until November 2, 2012 because they waited for the district court to rule. The failure to enforce this

timeline prejudices Kool Smiles by delay and undermines the TCPA's goal of ensuring that injured parties may pursue meritorious lawsuits.[19]

Kool Smiles takes the position that the district court has inherent power to manage its own docket since the TCPA does not apply in federal court, *Cranford v. Morgan Southern, Inc.*, 421 F. App'x 354, 357 (5th Cir. 2011) ("A district court has the inherent power to manage and control its own docket . . . ."), and, as a result, M&B's notice of appeal was timely so long as the TCPA does not apply in federal court.  But if the TCPA does apply in federal court, then the Texas Legislature's careful crafting of balancing of rights must be respected, as explained above in Argument Section II.B.  Applying the TCPA in a piecemeal fashion would invent a new, judicially-created scheme that was not enacted by the State of Texas and does not comply with the procedures required under the federal rules of civil and appellate procedure.

Accordingly, the only way to reconcile Rule 4 with the TCPA would be to simultaneously create a situation in which M&B's notice of appeal in this matter was untimely.  Thus, either the TCPA does not apply in federal court because it

---

[19] Additionally, the TCPA also requires that appellate courts afford expedited treatment to all TCPA appeals. TEX. CIV. PRAC. & REM. CODE § 27.008(c).  Here, this Court expressly declined to do so notwithstanding the substantial delays in prosecuting the underlying case that Kool Smiles has already endured.  S.R.E. Tab 4.  Thus, Kool Smiles has already been subjected to prejudice by the piecemeal application of the statute.

conflicts with Rule 4 or the TCPA does apply in federal court and M&B's appeal

should be dismissed as untimely under the TCPA's appellate framework.

### C.     These Dispositive Conflicts are Indicative of the Fundamental Incompatibility of the TCPA and Federal Procedure

These two examples of direct conflicts between the TCPA and the federal

rules are merely symptomatic of the fundamental discord between the TCPA and

federal procedure.  The TCPA forces courts to hold hearings regardless of whether

the trial court feels a hearing is necessary, deprives trial courts of the ability to

control their dockets, and automatically delays the prosecution of lawsuits.  *See*

Tex. Civ. Prac. & Rem. Code §§ 27.004, 27.005(a), 27.003(c).

While the Texas Legislature may have felt these devices were appropriate

within Texas's own procedural system, they offend several basic premises of

federal authority and procedure.  This Court has long held that federal district

courts require substantial inherent authority to manage the means and timing of

judicial process to effectively address the business of the federal courts.  *See, e.g.*,

*Cranford*, 421 F. App'x at 357 (citing *United States v. Colomb*, 419 F.3d 292, 299

(5th Cir. 2005)); *United States Abatement Corp. v. Mobil Exploration & Producing

U.S., Inc. (In re United States Abatement Corp.)*, 39 F.3d 556, 560 (5th Cir. 1994).

With respect to docket management, a district court has the "inherent power to

manage its own docket to achieve the just and efficient disposition of cases."  *In re

Stone*, 986 F.2d 898, 903 n.3 (5th Cir. 1993).  With respect to the conduct of

hearings, federal courts have held "that the decision whether or not to hold an oral hearing on a motion to dismiss lies in the sound discretion of the trial court." *Greene v. WCI Holdings Corp.*, 136 F.3d 313, 316 (2d Cir. 1998); *accord Rose v. Utah State Bar*, 471 F. App'x 818, 820 (10th Cir. 2012).

In fact, in *Hanna—the seminal case* addressing state-federal rule conflicts—the Supreme Court used the sort of state-usurpation of federal procedural timelines like that mandated by the TCPA as the epitome of why state law cannot be permitted to trump federal procedure.  The Court explained:

> For example, having brought suit in a federal court, a plaintiff cannot then insist on the right to file subsequent pleadings in accord with the time limits applicable in state courts, even though enforcement of the federal timetable will, if he continues to insist that he must meet only the state time limit, result in determination of the controversy against him.

*Hanna*, 380 U.S. at 468-69.

Applying the TCPA in federal court would fundamentally alter the power of federal courts to carry out judicial business, interfere with federal litigants' access to the courts, and, most troubling, create a parallel system of federal procedure in cases involving Texas common-law actions, resulting in the simultaneous derogation of federal rights in cases—like this one—that also involve federal question claims.

**IV.    The District Court Correctly Concluded That M&B's Advertising Constituted Commercial Activity Exempt from the Coverage of the TCPA**

The district court correctly held that M&B's defamatory advertising is excluded from the TCPA's protections by the TCPA's own commercial activity exemption.  *See* USCA5 1578; *see also* TEX. CIV. PRAC. & REM. CODE § 27.010(b).  M&B's lone authority offered in response is a California decision addressing a very different provision of California's anti-SLAPP statute.  But as explained below, a plain reading of the authority cited by M&B clearly supports the district court's holding.

**A.    The Plain Language of the TCPA's Commercial Speech Exemption Precludes M&B from Applying the TCPA to this Case**

Under the TCPA, a defendant may not bring an anti-SLAPP motion if the plaintiff's claims are premised upon commercial activity.  TEX. CIV. PRAC. & REM. CODE § 27.010(b).  The TCPA:

> does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id.*  There is no exception to the commercial speech exemption.

Applying this exemption, the district court found that "[h]ere, Mauze & Bagby are primarily engaged in selling services, namely, legal services to clients,"

and "[t]heir advertisements offer those legal services to potential clients who may wish to sue Kool Smiles." USCA5 1578; *see also* USCA5 11-18, 25-36; 116-27; 128-33; 134-140; 149-155.[20] In fact, M&B have repeatedly admitted that the intended audience for their advertisements was potential buyers of their legal services. *See* USCA5 133, 265, 269 (M&B describing their communications as advertisements).

Moreover, the commercial nature of M&B's advertising is plainly apparent. The transcripts of M&B's radio and television advertisements not only relay all of M&B's false and defamatory statements, they also advise—with emphasis added in the original—that audience members "may have a CLAIM" before directly inviting audience members to visit a commercial website or call a toll-free telephone number. USCA5 133, 139. The script for M&B's television advertisement even expressly requires the announcer to advise the audience that they are receiving an "Advertisement brought to you by Tom Bagby." USCA5 133. M&B's website makes similar claims and adds four specific reasons to "choose" M&B: "Flexible Appointment Availability"; "Personal Attention On Every Case"; "Local Representation"; and "Free Initial Consultation." USCA5

---

[20] The cited extrinsic documents are properly before the Court because they were "referred to in the plaintiff's complaint and are central to the plaintiff's claim." *See Vouchides v. Houston Cmty. Coll. Sys.*, No. H–10–2559, 2011 WL 4592057, at *4 (S.D. Tex. Sept. 30, 2011) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

151.  Thus, M&B's communications were unmistakably commercial

advertisements offering services to potential clients.

Though the commercial nature of M&B's publications is apparent, the fact

that M&B recognized that they were engaged in commercial speech is underscored

by their decision to submit their advertisements to the Texas State Bar's

Advertising Review Committee.  USCA5 13, 22; 117-20; 129-32; 135-38.  After

all, the filing and review requirements of Texas Disciplinary Rule of Professional

Conduct 7.07 only require submission of "solicitation communications" and

"advertisements."  *See* TEX. DISCIPLINARY R. OF PROF. CONDUCT 7.07(a)-(b).

### B.     The Plain Language of the Exemption Shows the Texas Legislature's Intent to Broadly Exclude Commercial Activity

Unable to overcome the plain language of the statute, M&B argue that the

Texas Legislature did not intend for lawyers' commercial activity to be exempted.

But M&B's argument has no support in the TCPA or its legislative history.  In fact,

M&B could not—and did not—cite any relevant legislative history for the simple

reason that no legislative history contradicts the TCPA's plain language on this

point.

Texas courts use the plain language of a statute to discern legislative intent

"unless a different meaning is supplied by legislative definition . . . or the plain

meaning leads to absurd results."  *Tex. Lottery Comm'n v. State Bank of DeQueen*,

325 S.W.3d 628, 635 (Tex. 2010).  No part of the exemption has been legislatively

defined to exclude commercial activity carried out by lawyers. Instead, the exemption treats lawyers engaged in commercial solicitations like any other profession or business. In fact, as M&B note in their briefing, one Texas court recently classified "legal services" as "services" under Texas Civil Practice & Remedies Code § 27.001(7)(E). *See* Appellants' Br. 40 n.20 (citing *Avila*, 2012 WL 6633994, at *6). As this Court has held, "[i]t is a well-accepted rule of statutory construction that 'identical words used in different parts of the same act are intended to have the same meaning.'" *Consol. Cos., Inc. v. Union Pac. R.R. Co.*, 499 F.3d 382, 387 (5th Cir. 2007).

M&B's unsupported interpretation would create a strange dual system in which all commercial advertisers would be excluded from the protections of the TCPA except for lawyers. Absent a clear exclusion of lawyers from the exemption, such a result simply does not make sense. Instead, the Texas Legislature sought to exempt *all* commercial purveyors of goods and services—*including lawyers*—from engaging in tortious commercial activity for their own pecuniary gain while simultaneously using the TCPA as a shield. This understanding comports with the Supreme Court's express rejection of the proposition that commercial speech by lawyers enjoys added protections because it is somehow different from other classes of commercial speech. *See Zauderer v.*

*Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S.626, 637 & n.7
(1985).

Even if the Court felt compelled to look beyond the plain language of the
statute, nothing in the legislative history of the TCPA supports M&B's claim that
"the Texas Legislature envisioned the exemption applying in customer-retailer
disputes."[21]  Appellants' Br. 27.  M&B do not cite a single piece of legislative
history that speaks to the scope of the TCPA's commercial activity exemption.[22]
*See* Appellants' Br. 26-28.  And, a careful review of the legislative history of the
statute reveals that no such support exists.  *See, e.g.*, H.B. 2973, 82nd Leg., R.S.
(Tex. 2011); House Committee Report; Senate Report; S., Amendments, H.B.
2973 82nd Leg., R.S. (Tex. 2011).

In short, the TCPA's plain language and legislative history unequivocally
support the district court's conclusion that the commercial activity exemption
applies to M&B's commercial advertisements.

---

[21] M&B repeatedly mistakenly refer to the TCPA as the "Texas Consumer Participation
Act."  Appellants' Br. vi, 1, 21.  The correct name of the statute is the "Texas Citizens
Participation Act."  *See* H.B. 2973, 82nd Leg., R.S. § 1 (Tex. 2011).  M&B's misunderstanding
with respect to the title of the statute may have contributed to their incorrect assumption that the
TCPA exemption is exclusively focused on consumer activity.

[22] The only item of legislative history cited in M&B's entire argument—the purpose
statement included in the Texas House Committee on the Judiciary's Bill analysis—does not
actually support their claim.  Nothing about maximizing non-commercial free exercise of
expressive, associational, and petition rights is inconsistent with choosing to exclude commercial
activities that might also implicate those rights.

### C.     M&B's Sole Cited Authority Affirmatively Supports the District Court's Interpretation of the TCPA in this Case

The California Supreme Court's construction of California's commercial speech exemption in *Simpson Strong-Tie Co. v. Gore*, 230 P.3d 1117 (Cal. 2010), to the extent it is even relevant to this case, actually supports the district court's application of Texas's commercial speech exemption.

The California commercial speech exemption imposes a requirement that is nowhere to be found in the Texas statute. *See* CAL. CIV. CODE § 425.17(c).  Like the Texas statute, the California exemption applies to commercial sellers targeting potential buyers.  But the California exemption's second prong is substantively different.  Rather than broadly exempting all such commercial conduct, the California exemption requires a plaintiff to show that a defendant's "statement or conduct consists of representations of fact about *that person's or a business competitor's business operations, goods or services . . . .*"  *Id.* § 425.17(c)(1) (emphasis added).  Thus, the plain language of the California exemption limits its application to those cases where a defendant either makes a representation of fact about itself or a business competitor.

Despite M&B's assertion that the exemptions are "similar," the TCPA contains no such limitation.  The TCPA's exemption broadly applies to all conduct "aris[ing] out of the sale or lease of goods, services, or an insurance product or a commercial transaction."  TEX. CIV. PRAC. & REM. CODE § 27.010(b).  Thus, while

the California exemption does not apply to representations of fact about someone

other than a business competitor—such as solicitation for clients against a

litigation target—the TCPA exemption is not so limited.

In deciding whether the California exemption applied to attorney advertising

referencing a particular third-party company, the *Simpson* decision focused

exclusively on whether the advertisement made factual representations about the

advertiser or the advertiser's business competitor.  *Simpson*, 230 P.3d at 1127-31.

The court observed that: "The point of contention concern[ed] whether the causes

of action '[arose] from . . . representations of fact about [the lawyer's] . . . business

operations, goods, or services.'"  *Id.* at 1129 (citing CAL. CIV. CODE §

425.17(c)(1)).

Examining the California exemption in that context, the court explained:

Had the Legislature intended the commercial speech exemption to
encompass representations of fact about *any* business operations,
goods, or services made for the purpose of promoting sales, leases, or
transactions in the speaker's own goods or services, then it would not
have limited the exemption to statements or conduct consisting of
"representations of fact about *that person's or a business competitor's*
business operations, goods, or services."

*Simpson*, 230 P.3d at 1130-31 (emphasis in original).  In other words, the *Simpson*

decision was focused entirely on a clause that that has no parallel in the TCPA.[23]

M&B's argument finds no support in *Simpson*.

## V.     Kool Smiles's Pleadings and Affidavits Provide Clear and Specific Evidence in Excess of TCPA Requirements

None of M&B's briefing regarding its "evidence" as to the elements of Kool

Smiles's claims has any relevance to this appeal.  The TCPA requires only that

non-movants, here Kool Smiles, make a prima facie showing, a well-understood

burden in American law, as to each essential element of their claims using clear

and specific evidence.[24]  TEX. CIV. PRAC. & REM. CODE § 27.005(c).  This *de*

*minimis* burden is satisfied where the non-movant's pleadings and supplemental

affidavits present the "minimum quantum of evidence necessary to support a

rational inference that the allegation of fact is true."  *In re E.I. DuPont de Nemours*

*& Co.*, 136 S.W.3d 218, 223 (Tex. 2004).  The TCPA does not provide for

---

[23] Notably, the TCPA was enacted after both the California anti-SLAPP statute and the California Supreme Court's decision in *Simpson*.  Thus, the Texas Legislature had both sources available to it to inform its drafting of the exemption had it wished to exclude defamatory commercial speech addressing third parties.

[24] M&B argue that the Court should disregard the TCPA's express demand for a prima facie showing and, instead, resort to an unrelated Texas statute addressing journalistic privilege to dramatically elevate a plaintiff's TCPA burden.  Appellants' Br. 42-43 (citing TEX. CIV. PRAC. & REM. CODE § 22.024).  Not only does the statute cited by M&B address a wholly unrelated subject matter, it does not even use the same language as the TCPA—requiring a "clear and specific *showing*" whereas the TCPA only requires that a plaintiff "establish[] by clear and specific evidence *a prima facie case*."  *Compare* TEX. CIV. PRAC. & REM. CODE § 22.024 (emphasis added) *with* TEX. CIV. PRAC. & REM. CODE § 27.005(c) (emphasis added).

consideration of any evidence beyond the pleadings and affidavits. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.005(c), 27.006(a). Under this framework, Kool Smiles has readily demonstrated a prima facie case of both defamation and business disparagement.[25]

### A. The Court Need Not Address Kool Smiles's Prima Facie Showing in the First Instance on Appeal

Kool Smiles believes for the reasons set forth below that it has adequately presented a prima facie case under the TCPA. Nonetheless, if the Court reaches this issue, the most appropriate course would be for this Court to remand this matter to the district court to assess whether Kool Smiles carried its burden. The Fifth Circuit generally declines to address issues not reached in the first instance by the district court. *See, e.g.*, *Tex. Keystone, Inc. v. Prime Natural Res., Inc.*, 694 F.3d 548, 556 (5th Cir. 2012).

Because the district court held that the TCPA did not apply to the state-law claims in this case because M&B were engaged in commercial activity, it did not address (1) whether the evidence presented by M&B was admissible; (2) whether M&B showed by a preponderance of the evidence that the action was based on M&B's rights of free speech, petition, or association; or (3) whether Kool Smiles

---

[25]M&B did not move on Kool Smiles's § 16.29 claims in the district court. Accordingly, those claims are not before this Court on appeal. *See Horton*, 387 F.3d at 435 (arguments not raised in the district court are waived); *see also supra* note 4.

had established a prima facie case for each essential element of its claims. *See* USCA5 1575-80.

Moreover, Kool Smiles articulated dozens of specific evidentiary objections to each of M&B's improper exhibits submitted to the district court. USCA5 1466-96. The district court did not reach Kool Smiles's objections because it denied M&B's motion as to the claims at issue under the commercial activity exemption. USCA5 1578. Were the Court to now take up the issue of Kool Smiles's prima facie showing and consider looking to M&B's submissions, it would be required to undertake first instance evaluations of Kool Smiles's evidentiary objections. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 383, 388 (2008) ("[W]eighing any factors counseling against admissibility is a matter first for the district court's sound judgment."); *see also United States v. Impson*, 482 F.2d 197, 199-200 (5th Cir. 1973) (holding that whether evidence is admissible "is a determination in the first instance to be made by the trial judge").

Accordingly, these issues should not be addressed for the first time on appeal, and, should it find for M&B on all of the other issues presented *supra*, the Court should consider remanding to the district court to address these issues in the first instance.

**B.    Kool Smiles's Defamation Claim**

As articulated more fully in the fact section, Kool Smiles has provided prima

facie proof of each of the five elements of a defamation claim: (1) M&B published

statements of fact, USCA5 11, 15-16; 1529-30; (2) M&B's statements were

defamatory, USCA5 11-12, 15-16; 150; 153; 1541; 1535-36; 1531; (3) M&B's

statements were false, USCA5 1502; 1515-20; 1528, 1530; and (4) Kool Smiles

suffered damages as a result, USCA5 1501-03.  *Moore v. Waldrop*, 166 S.W.3d

380, 384 (Tex. App.—Waco 2005, no pet.); *see also Brown v. Swett & Crawford

of Tex., Inc.*, 178 S.W.3d 373, 382 (Tex. App.—Houston [1st Dist.] 2005, no pet.)

(citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).  On each

of these elements, M&B make a series of arguments that are directly contradicted

by prevailing Texas law.  None of M&B's arguments has any merit.

**1.    M&B's Assertive Questions Constituted Statements of Fact**

M&B claim that they never made a statement about Kool Smiles because

their defamatory remarks were couched in assertive questions.  Appellants' Br. 52-

53.  But M&B offer no authority in support of their position, *id.*, and Texas law

does not allow individuals to engage in defamation through the use of suggestive

questions, *see, e.g.*, *Gaylord Broad. Co. v. Francis*, 7 S.W.3d 279, 284 (Tex.

App.—Dallas 1999, pet. denied) (holding that implied assertions, even when

couched in non-factual statements such as opinions, support a claim of defamation).

### 2.     M&B's Statements Were Defamatory Per Se under Texas Law

M&B make two arguments in support of their claim that their advertisements were not defamatory.  *See* Appellants' Br. 54-58.

First, M&B claim that their speech was not defamatory because it was not false.  Appellants' Br. 57.  Though Kool Smiles has shown that M&B's statements were false, falsity and defamatory content are separate elements of a Texas defamation claim.  *See Brown*, 178 S.W.3d at 382.  Thus, whether M&B's statements were false has nothing to do with whether they were defamatory.

Second, M&B claim that government investigations, some examining unrelated matters or even unrelated entities, somehow afforded them carte blanche to publish any defamatory advertising they deemed profitable.  Appellants' Br. 58.  The only authority cited for their argument—*Swate v. Schiffers*, 975 S.W.2d 70, 74-75 (Tex. App.—San Antonio 1998, pet. denied)—is readily distinguishable from this case.  In *Swate*, the court addressed the case of a plaintiff who, unlike Kool Smiles, asserted a claim of defamation against the media notwithstanding the fact that he was adjudicated liable and punished by the Texas and Louisiana Boards of Medical Examiners three separate times.  *Id.* at 74.  As the court put it, "Swate's reputation was so deplorable prior to the publication . . . that the three [defamatory] statements could not have further injured Swate's reputation," far different than these circumstances.  *Id.*

### 3. Kool Smiles Made a Prima Facie Showing of Falsity

Despite Kool Smiles's proffer of detailed evidence demonstrating prima facie that M&B's statements were false, M&B again claim that the Court should find that Kool Smiles failed to carry its burden based on evidence presented by M&B. But neither the statute nor federal law permit a court to weigh evidence at the motion to dismiss stage of litigation. TEX. CIV. PRAC. & REM. CODE § 27.006(a); *3M Co. v. Boulter*, No. 11-cv-1527, 2012 WL 5245458, at *1 (D.D.C. Oct. 24, 2012) (explaining the Supreme Court holds that weighing competing evidence in the context of dispositive motions violates the Seventh Amendment right to a jury trial).

### 4. Although M&B are Strictly Liable for Their Defamatory Statements, Kool Smiles has Shown that M&B Acted with Malice

M&B seek to impose a heightened burden on Kool Smiles by claiming that Kool Smiles is a "limited public figure." But, this argument has no foundation in fact or law.

To determine whether an individual is a limited-purpose public figure, courts have adopted the following three-part test:

- The controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;

- The plaintiff must have more than a trivial or tangential role in the controversy; and

- The alleged defamation must be germane to the plaintiff's participation in the controversy.

*Klentzman v. Brady*, 312 S.W.3d 886, 904-905 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *McLemore*, 978 S.W.2d at 571-72).

Under this test, Texas's "limited public figure" doctrine addresses only matters of existing public debate where the communications at issue were necessary to help the public form an opinion about an already salient public issue. *See, e.g.*, *Klentzman*, 312 S.W.3d at 905. Here, M&B disseminated *advertisements* through a variety of mediums about *private* claims against a *private* company. There were no news stories about Kool Smiles's Texas clinics improperly treating Medicaid patients or defrauding Medicaid prior to M&B's defamatory advertising campaign. USCA5 1501; 1541; 1536. M&B ask this Court to create a system in which a defendant can insulate himself from liability by more loudly and broadly disseminating his defamatory statements such that they attract public attention. Texas simply does not define "public controversies" in such an illogical and circular fashion. *See Klentzman*, 312 S.W.3d at 905-906 (holding that a plaintiff could not be deemed a public figure based on publications generated by the defendant).

Additionally, under the second prong of the test set forth above, the Court must consider the following factors: (1) whether the plaintiff actually sought publicity surrounding the controversy; (2) whether the plaintiff had access to the

media; *and* (3) whether the plaintiff voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation. *Id.* at 905 (citing *McLemore*, 978 S.W.2d at 572-73). Kool Smiles did not *seek* the publicity created by M&B's advertisements. And Kool Smiles did not engage in any conduct that involved an increased risk of exposure or injury to reputation. As Kool Smiles did not "participate" in the controversy, M&B cannot satisfy the third prong either. Thus, Kool Smiles does not qualify as a "limited public figure" under any of the prongs of Texas's test.[26]

Accordingly, M&B are strictly liable for their defamatory statements. *Snead v. Redland Aggregates Ltd.*, 998 F.2d 1325, 1334 (5th Cir. 1993) (finding that "neither the Constitution nor Texas law imposes any fault requirement for the recovery of presumed damages in private/private cases of libel per se"); *see also Peshak v. Greer*, 13 S.W.3d 421, 425-26 (Tex.App.—Corpus Christi 2000, no pet.) (holding that "[n]o culpable mental state" is required for defamation generally).

Nonetheless, Kool Smiles also made a prima facie showing that M&B acted with malice. Under Texas law, a plaintiff may prove malice by establishing a

---

[26] In response, M&B argue that Kool Smiles thrust itself into the public debate by engaging in misconduct. Appellants' Br. 60-61. This circular argument requires the Court to assume the truth of M&B's statements despite the fact that Kool Smiles is the non-movant on a motion to dismiss. Further, the "evidence" cited by M&B does not support M&B's claim that Kool Smiles "held news conferences and made public comments regarding children's dental health." *Compare* Appellants' Br. 61 *with* USCA5 292-94; 327, 352-1160, 1162, 1175 (cited by M&B in support of their statement).

defendant's failure to investigate and purposeful avoidance of the truth. *Tex. Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings Inc.*, 219 S.W.3d 563, 578-79 (Tex. App.—Austin 2007, pet. denied) (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989) and *Bentley v. Bunton*, 94 S.W.3d 561, 601 (Tex. 2002)); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000) ("Although actual malice focuses on the defendant's state of mind, a plaintiff can prove it through objective evidence about the publication's circumstances.").[27]  As set forth in the facts, M&B failed to make any effort to reasonably investigate Kool Smiles before broadcasting defamatory statements across Texas.  If M&B had conducted even a minimally competent investigation, they would have discovered the truth—that their accusations of chronic patient mistreatment and criminal acts were false.  Such a failure to investigate and purposeful avoidance of the truth is sufficient to establish a prima facie case of malice.

### 5.    Kool Smiles Made a Prima Facie Showing of Damages

M&B complain that Kool Smiles's affidavit from Geoff Freeman was somehow inadequate to make a prima facie showing of special damages. Appellants' Br. 64-65.  Should the Court find that M&B's statements constituted

---

[27] M&B point to their affidavits to show lack of malice, but, under the TCPA, M&B's affidavits are not properly before the court for this purpose.

defamation per se, the Court must presume Kool Smiles suffered general damages. *Tex. Disposal Sys. Landfill, Inc.*, 219 S.W.3d at 580-81.

But even if the Court finds only that M&B's statements constituted defamation per quod, Kool Smiles has adequately demonstrated special damages. Mr. Freeman asserted that, as a *direct* consequence of M&B's advertising, Kool Smiles has *already* suffered patient losses negatively impacting the revenues and profits of Kool Smiles's clinics. USCA5 1502-03. Additionally, Kool Smiles has *already* been forced to make significant expenditures to purchase rehabilitative advertising in the affected markets. USCA5 1501. Accordingly, M&B's challenges to the adequacy of Mr. Freeman's affidavit are without merit.

## C.     Kool Smiles's Business Disparagement Claim

Kool Smiles's articulation of the facts of this case adequately demonstrates a prima facie case of the elements for a claim of business disparagement: (1) M&B published disparaging words about Kool Smiles, USCA5 11, 15-16; 1529-30; (2) M&B's statements were false, USCA5 1502; 1515-20; 1528, 1530; (3) M&B acted with malice, *see supra* Statement of Fact Section II.B (detailing M&B's defective investigation) and Argument Section V.B.4; (4) M&B lacked privilege, USCA5 11-12, 15-16; 1529; 1500; *see also* Argument Section V.D *infra*; and (5) Kool

Smiles suffered special damages, USCA5 1501-503. *Pension Advisory Grp. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 702 (S.D. Tex. 2011).[28]

### D.     The Absolute Litigation Privilege Is Irrelevant to this Motion

The litigation privilege has no application in this case.[29]  The litigation privilege protects zealous client advocacy, not client solicitation.  *Rhodes Colleges, Inc. v. Johnson*, No. 3:10-CV-0031-D, 2012 WL 627273, at *6-7 (N.D. Tex. Feb. 27, 2012) (Fitzwater, C.J.).  The sole authority addressing this issue under Texas law—addressing lawyer internet advertising—refutes M&B's claim that lawyer advertising is immune from tort liability.[30]  In *Rhodes*, Chief Judge Fitzwater held that defamatory advertising on an attorney's website was not protected by Texas's litigation privilege.  *Id.*

To distinguish *Rhodes*, M&B misstate the court's holding.  M&B claim the court held that "had the attorney shown that the website was intended to attract

---

[28] Other than incorporating their defamation arguments by reference, M&B make no additional arguments with respect to their business disparagement claims.  Accordingly, any other arguments specific to Kool Smiles's business disparagement claim should be deemed waived.  *Askanase v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997) ("All issues not briefed are waived.").

[29] The Court need not address the absolute litigation privilege with respect to Kool Smiles's defamation claims as privilege is merely an affirmative defense to defamation.  *See Clark v. Jenkins*, 248 S.W.3d 418, 433 (Tex. App.—Amarillo 2008, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE § 27.005(c) (requiring a plaintiff to make a prima facie showing on only the "essential elements" of her claim).

[30] In fact, if the litigation privilege applied to solicitations for new clients, then all attorney advertising would be exempt from defamation claims no matter how clear the attorney's liability.

new clients, the privilege would have applied." Appellants' Br. 46 n.23. In fact, the court expressly reached the *opposite* conclusion when it stated that privilege did not apply because the evidence showed that the attorney was "using her website to attract *new* clients, not . . . for her *existing* cases." *Rhodes*, 2012 WL 627273, at *6. M&B's defamatory comments were seeking *new* clients. *See supra* Argument Section IV.A. Thus, *Rhodes* applies and M&B's statements should not be protected by the absolute litigation privilege.

## CONCLUSION

For these reasons, the Court should either dismiss M&B's appeal for lack of jurisdiction or affirm the order of the district court.

Dated:  February 19, 2013                    Respectfully Submitted,

                                             s/ *Darren L. McCarty*
                                             Darren L. McCarty
                                             Attorney-In-Charge
                                             Texas State Bar No. 24007631
                                             Sean M. Whyte
                                             Texas State Bar No. 24047100
                                             Michael A. Correll
                                             Texas State Bar No. 24069537
                                             2828 North Harwood Street, Suite 1800
                                             Dallas, Texas 75201
                                             (214) 922-3400 – Telephone
                                             (214) 922-3899 – Facsimile

                                             **ATTORNEYS FOR PLAINTIFFS
                                             NCDR, L.L.C.; DENTISTRY OF
                                             BROWNSVILLE, P.C. d/b/a KOOL
                                             SMILES; and KS2 TX, P.C. d/b/a KOOL
                                             SMILES**

# CERTIFICATE OF SERVICE

I, Darren L. McCarty, certify that today, February 19, 2013, a copy of the

BRIEF OF APPELLEES NCDR, L.L.C., DENTISTRY OF BROWNSVILLE, P.C., AND KS2

TX, P.C. and APPELLEES' SUPPLEMENTAL RECORD EXCERPTS were served upon the

following individuals and the Court via ECF pursuant to the requirements of Fifth

Circuit Rule 31.1 and Federal Rule of Appellate Procedure 31(b):

Kimberly S. Keller
Keller Stolarczyk PLLC
234 West Bandera Rd., No. 120
Boerne, Texas 78006
(830) 981-5000 – Telephone
(888) 293-8580 – Facsimile
kim@kellsto.com

*/s/ Darren L. McCarty*

Darren L. McCarty

## CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir.R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. R. 32.2.7(b).

1.    Exclusive of the exempted portions in 5th Cir. R. 32.2.7(b)(3), the brief contains 13,817 words.

2.    The brief has been prepared in proportionally spaced typeface using <u>Microsoft Word 2010</u> in <u>Times New Roman 14 pt.</u>

3.    If the Court so requests, the undersigned will provide an electronic version of the brief and/or copy of the word or line printout.

4.    The undersigned understands a material misrepresentation in completing this certificate or circumvention of the type-volume limits in 5th Cir. R. 32.2.6 may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

5.    All required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13.

6.    The document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Darren L. McCarty*

Darren L. McCarty

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

February 20, 2013

Mr. Darren Lee McCarty
Alston & Bird, L.L.P.
2828 N. Harwood Street
Suite 1800
Dallas, TX 75201-0000

      No. 12-41243,
      NCDR, L.L.C., et al v. Mauze & Bagby, P.L.L.C., et al
      USDC No. 5:12-CV-36

The following pertains to your brief electronically filed on 2/19/13.

You must submit the seven paper copies of your brief required by 5ᵀᴴ CIR. R. 31.1 within 5 days of the date of this notice pursuant to 5th Cir. ECF Filing Standard E.1.

                         Sincerely,

                         LYLE W. CAYCE, Clerk

                         By:_____
                         Christina A. Gardner, Deputy Clerk
                         504-310-7684

cc:  Mr. Michael Arthur Correll
     Ms. Kimberly S. Keller
     Mr. Sean Michael Whyte